**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

|  |  |
|---|---|
| STATE OF KANSAS, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> THE UNITED STATES DEPARTMENT OF ) <br> LABOR, et al. ) <br> ) <br> Defendants. ) | Civil Action No. 2:24-cv-76-LGW-BWC |

**MEMORANDUM OF LAW IN SUPPORT OF CENTRO DE LOS DERECHOS DEL MIGRANTE, CANDELARIO RODRIGUEZ SERRANO, AND JORGE SÁNCHEZ REYES'S MOTION TO INTERVENE AS DEFENDANTS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. 2

INTRODUCTION ................................................................................................................. 5

BACKGROUND ................................................................................................................... 6

I.   Movants ......................................................................................................................... 6

II.  The H-2A Program ....................................................................................................... 8

III. The Challenged Rule .................................................................................................. 10

IV.  This Litigation ............................................................................................................ 12

ARGUMENT ....................................................................................................................... 13

I.   Movants should be granted leave to intervene as of right. ........................................ 13

      A. The motion is timely. ................................................................................................ 14

      B. Movants have relevant interests in the action that would be impaired by an adverse decision. ................................................................................................................. 15

      C. The existing parties do not adequately represent Movants' interests. ..................... 18

1

II. In the alternative, Movants should be granted permissive leave to intervene. ........................ 19

CONCLUSION............................................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**                                                                                                                        **Pages**

*Alabama v. U.S. Department of Commerce*, 2018 WL 6570879 (N.D. Ala. Dec. 13, 2018)........ 20

*Allied Concrete & Supply Co. v. Baker*, 904 F.3d 1053 (9th Cir. 2018) ................................ 17, 18

*Arriaga v. Florida Pacific Farms, LLC*, 305 F.3d 1228 (11th Cir. 2002).................................... 10

*Associated Dog Clubs of New York State v. Vilsack*, 44 F. Supp. 3d 1 (D.D.C. 2014) ................. 17

*Berger v. North Carolina State Conference of the NAACP*, 597 U.S. 179 (2022)........................ 18

*Clark v. Putnam County*, 168 F.3d 458 (11th Cir. 1999)............................................................... 18

*Coastal Conservation Ass'n v. Locke*, 2010 WL 1407680 (M.D. Fla. Apr. 6, 2010).................... 19

*Crossroads Grassroots Policy Strategies v. Federal Election Commission*, 788 F.3d 312 (D.C. Cir. 2015) ................................................................................................................................... 15

*CSX Transportation, Inc. v. Georgia Public Service Commission*, 944 F. Supp. 1573 (N.D. Ga. 1996) .................................................................................................................................... 18

*Cyclops Vapors 2, LLC v. FDA*, 2018 WL 1434823 (M.D. Ala. Mar. 22, 2018)......................... 20

*De Jesus Ramirez v. Reich*, 156 F.3d 1273 (D.C. Cir. 1996) ....................................................... 16

*Federal Savings & Loan Insurance Corp. v. Falls Chase Special Taxing District*, 983 F.2d 211 (11th Cir. 1993).................................................................................................................. 13

*First National Bank of Tennessee v. Pinnacle Properties V, LLC*, 2011 WL 13221046 (N.D. Ga. Nov. 1, 2011) ....................................................................................................... 13

*Florida Fruit & Vegetable Ass'n v. Brock*, 771 F.2d 1455 (11th Cir. 1985) ................................ 16

*Frederick County Fruit Growers Ass'n, Inc. v. Martin*, 968 F.2d 1265 (D.C. Cir. 1992)............. 16

*Georgia v. Biden*, 574 F. Supp. 3d 1337 (S.D. Ga. 2021) ............................................................ 19

*Georgia Aquarium, Inc. v. Pritzker*, 309 F.R.D. 680 (N.D. Ga. 2014).................................. 17, 20

*Georgia River Network v. U.S. Army Corps of Engineers*, 2011 WL 3320514 (S.D. Ga. Aug. 1, 2011) ........................................................................................................ 15

*Howard v. McLucas*, 782 F.2d 956 (11th Cir. 1986).................................................................... 15

*Huff v. Commissioner of IRS*, 743 F.3d 790 (11th Cir. 2014)...................................................... 18

*Kurapati v. U.S. Bureau of Citizenship & Immigration Servs.*, 775 F.3d 1255 (11th Cir. 2014). 16

*La Union del Pueblo Entero v. Abbott*, 29 F.4th 299 (5th Cir. 2022) ............................................. 17

*Meek v. Metropolitan Dade County*, 985 F.2d 1471 (11th Cir. 1993)...................................... 14, 18

*National Mining Ass'n v. United Steel Workers,* 985 F.3d 1309 (11th Cir. 2021) ......................... 15

*National Wildlife Federation v. Souza*, 2008 WL 11331895 (S.D. Fla. May 16, 2008) ............... 19

*North Carolina Growers' Ass'n v. Solis*, 2009 WL 4729113 (M.D.N.C. Dec. 3, 2009) ................ 19

*Ohio Security Insurance Co. v. Newsome*, 2015 WL 1419341 (S.D. Ga. Mar. 27, 2015) ............ 14

*Owners Insurance Co. v. Tabby Place Homeowners Ass'n, Inc.*, 2022 WL 17327497
    (S.D. Ga. Nov. 29, 2022) ......................................................................................................... 13

*Peri & Sons Farms, Inc. v. Acosta*, 374 F. Supp. 3d 63 (D.D.C. 2019)......................................... 16

*Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278 (11th Cir. 2017).... 14

*Shalom Pentecostal Church v. Acting Secretary United States Dep't of Homeland Security*,
    783 F.3d 156 (3d Cir. 2015)..................................................................................................... 16

*Stone v. First Union Corp.*, 371 F.3d 1305 (11th Cir. 2004)......................................................... 13

*Technology Training Associates, Inc. v. Buccaneers Ltd. Partnership*, 874 F.3d 692
    (11th Cir. 2017)................................................................................................................... 13, 18

*Texas v. United States*, 805 F.3d 653 (5th Cir. 2015) ................................................................... 15

*Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972) ........................................... 18

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Commission*, 834 F.3d 562
    (5th Cir. 2016) .......................................................................................................................... 15

**Federal Statutes**

8 U.S.C. § 1101(a)(15)(H)(ii)(A)..................................................................................................... 8

8 U.S.C. § 1188(a)(1) ...................................................................................................................... 9

8 U.S.C. § 1188(c) .......................................................................................................................... 9

8 U.S.C. § 1188(d) .......................................................................................................................... 9

8 U.S.C. § 1188(g)(2)...................................................................................................................... 9

Immigration Reform and Control Act of 1986, Pub. L. 99-603, 100 Stat. 3359 (1986)................. 8

**Rules and Regulations**

Federal Rule of Civil Procedure 24(a) ................................................................................... 13, 15

Federal Rule of Civil Procedure 24(b)......................................................................................... 19

3

2024 Regulations

    20 C.F.R. § 655.120(b)(3) .................................................................................................. 11

    20 C.F.R. § 655.122(h)(4)(ii) ............................................................................................ 11

    20 C.F.R. § 655.135(h)(1) ........................................................................................... 11, 17

    20 C.F.R. § 655.135(h)(2) ........................................................................................... 12, 17

    20 C.F.R. § 655.135(m) .................................................................................................... 12

    20 C.F.R. § 655.135(n) ............................................................................................... 12, 17

    20 C.F.R. § 655.135(o) ..................................................................................................... 12

    29 C.F.R. § 501.4(a) ......................................................................................................... 12

Historic Regulations:

    20 C.F.R. § 655.120(b)(3) (2023) ..................................................................................... 11

    20 C.F.R. § 655.135(h) (2022) .......................................................................................... 11

Department of Labor, Final Rule, Improving Protections for Workers in Temporary Agriculture in the United States, 89 Fed. Reg. 33898 (Apr. 29, 2024) .......................................... *passim*

Department of Labor, Notice of Proposed Rulemaking, Improving Protections for Workers in Temporary Agricultural Employment in the United States, 88 Fed. Reg. 63750 (Sept. 15, 2023) ................................................................................................................................ 10

Department of Labor, Final Rule, Temporary Agricultural Employment of H-2A Nonimmigrants in the United States, 87 Fed. Reg. 61660 (Oct. 12, 2022) ................................................ 10

Department of Labor, Final Rule, Temporary Agricultural Employment of H-2A Aliens in the United States, 75 Fed. Reg. 6884 (Feb. 12, 2010) ............................................................ 10

Department of Labor, Final Rule, Temporary Agricultural Employment of H-2A Aliens in the United States; Modernizing the Labor Certification Process and Enforcement, 73 Fed. Reg. 77110 (Dec. 18, 2008). ................................................................................................. 10

Department of Labor, Interim Final Rule, Labor Certification Process for the Temporary Employment of Aliens in Agriculture and Logging in the United States, 52 Fed. Reg. 20496 (June 1, 1987) .......................................................................................................... 9

Department of Labor, Interim Final Rule, Enforcement of Contractual Obligations for Temporary Alien Agricultural Workers Admitted Under Section 216 of the Immigration and Nationality Act, 52 Fed. Reg. 20524 (June 1, 1987) ...................................................... 9

**Other Authorities**

Centro de Los Derechos del Migrante, Comment re: Doc. No. ETA-2023-0003 Improving Protections for Workers in Temporary Agricultural Employment in the United States, Nov. 14, 2023, https://www.regulations.gov/comment/ETA-2023-0003-0290 ............ 8, 17

Congressional Research Service, H-2A and H-2B Temporary Worker Visas: Policy and Related Issues, May 11, 2023, https://crsreports.congress.gov/product/pdf/R/R44849 .................. 8

Farmworker Justice and Other Migrant and Seasonal Farmworker Organizations, Comment re: Doc. No. ETA-2023-0003 Improving Protections for Workers in Temporary Agricultural Employment in the United States (RIN 1205-AC12), Nov. 14, 2023, https://www.regulations.gov/comment/ETA-2023-0003-0296 ..................................... 8, 17

Wage and Hour Division, Final Rule: Improving Protections for Workers in Temporary Agricultural Employment in the United States, https://www.dol.gov/agencies/whd/agriculture/h2a/final-rule ......................................... 12

## INTRODUCTION

Less than one month ago, Plaintiffs commenced this action, seeking vacatur of an April 2024 Department of Labor (DOL) rule that makes a number of changes to the rules governing the "H-2A" temporary agricultural worker program. *See* DOL, Final Rule, Improving Protections for Workers in Temporary Agricultural Employment in the United States, 89 Fed. Reg. 33898 (Apr. 29, 2024). Among other things, the Rule alters the date on which updated wage rates become effective, prescribes how certain wage information must be presented in job orders, clarifies how delays in start dates impact employer responsibilities to provide transportation and wages, and specifies how administrative debarments apply to successors in interest. The Rule also ensures that workers have access to key service providers, modifies existing non-retaliation provisions, adds bases on which employers cannot take adverse actions against workers, and provides additional protections for concerted activity by H-2A workers. Citing evidence of widespread substandard employment practices, DOL found that these protections were necessary to ensure that H-2A labor does not exert a downward pressure on the wages and working conditions of domestic workers. Plaintiffs ask this Court to set aside (and preliminarily enjoin) the Rule in its entirety.

Movants, two individual H-2A workers and a nonprofit organization that provides services to agricultural workers, seek to intervene in this action to defend the Rule. The Rule offers

protections for agricultural workers—protections that are key to reducing abuse of the H-2A program that harm H-2A workers and domestic workers alike. The Rule also makes it easier for service providers like Movant Centro de los Derechos del Migrante, Inc. (CDM) to carry out their programs and activities. Accordingly, should the Court grant Plaintiffs' requested relief, Movants' interests would be substantially harmed. Further, Movants' interests are substantially different from those of the governmental defendants, who already agreed to delay enforcement of certain protections of the Rule, and who may not adequately represent Movants' interests.

Movants respectfully request that they be granted leave to appear in this action as Intervenor Defendants as of right, pursuant to Rule 24(a), or, in the alternative, permissively, pursuant to Rule 24(b). Movants' counsel has conferred with the parties. Plaintiffs' counsel advised that "Plaintiffs oppose the motion to intervene but would not oppose the proposed intervenors submitting an amicus brief for the court's consideration." Defendants' counsel advised that Defendants "take no position on the motion to intervene at this time, but [] reserve the right to file a response, including a response in opposition."

## BACKGROUND

### I. Movants

Movant Candelario Rodriguez Serrano is a Mexican national who has performed seasonal work in the United States under the H-2A visa program since 2022 and intends to continue to do so. *See* Rodriguez Decl. ¶¶ 4–7. In his prior work as an H-2A worker, he has experienced poor treatment by employers. As detailed in his accompanying declaration, that treatment includes delayed payment of wages, withholding of his passport, and provision of unsafe transportation. *Id.* ¶¶ 9, 11, 12. He has also experienced retaliation when he complained about working conditions to management on behalf of himself and others. *Id.* ¶¶ 13–18. His employer also hampered his efforts

to obtain assistance from government agencies by preventing agency staff from speaking with him and others in employer-provided housing. *Id.* ¶¶ 19–22.

Movant Jorge Sánchez Reyes is a Mexican national who has performed seasonal work in the United States under the H-2A visa program since 2014 and intends to continue to do so. *See* Sánchez Decl. ¶¶ 2, 4–8. In his prior work as an H-2A worker, he, like Mr. Rodriguez, has experienced poor treatment by employers. As detailed in his accompanying declaration, this treatment includes delayed payment of wages, wage theft, restrictions on his ability to access medical services, and provision of unsafe transportation. *Id.* ¶¶ 10–11, 13–14. He has also faced employer intimidation when discussing workplace concerns with other workers and retaliation for complaints about missing wages. *Id.* ¶¶ 12, 17. He has also felt pressured not to speak with colleagues or government agency officials about mistreatment he encountered. *Id.* ¶ 15.

Movant CDM is a nonprofit organization with offices in the United States and Mexico, focused on promoting migrant workers' rights under U.S. law. *See* Micah-Jones Decl. ¶ 1. Since its founding in 2005, CDM has worked with thousands of H-2A workers, as well as domestic workers in corresponding employment and workers on other kinds of visas, in various capacities. *Id.* ¶ 2. CDM provides legal services to workers and, together with other partners, conducts outreach and education regarding health and community resources. *Id.* ¶¶ 2, 6. CDM has experienced obstacles in conducting this work due to workers' fears of retaliation, employer intimidation, and restrictions on access to employer-provided housing. *Id.* ¶¶ 8–10.

CDM has also convened the Comité de Defensa del Migrante (Migrant Defense Committee, or "Comité"), a group of current and former migrant workers in the H-2A and other programs. *Id.* ¶ 12, The Comité, which does not engage in collective bargaining, works to empower and organize migrant workers at work in the United States and in their home communities, to

create a culture of informed migration, and to center migrant workers' perspectives in conversations about policies that affect them. *Id.* Fear of retaliation constrains some Comité members' ability to carry out the organizing and educational activities that are central to the Comité's mission. *Id.* ¶ 13.

CDM submitted comments as part of the rulemaking at issue in this action, both in an individual capacity and as part of a coalition. *See* CDM, Comment re: Doc. No. ETA-2023-0003 Improving Protections for Workers in Temporary Agricultural Employment in the United States, Nov. 14, 2023, https://www.regulations.gov/comment/ETA-2023-0003-0290; Farmworker Justice and Other Migrant and Seasonal Farmworker Organizations, Comment re: Doc. No. ETA-2023-0003 Improving Protections for Workers in Temporary Agricultural Employment in the United States (RIN 1205-AC12), Nov. 14, 2023, https://www.regulations.gov/comment/ETA-2023-0003-0296.

## II. The H-2A Program

When first enacted in 1952, the Immigration and Nationality Act (INA) created an "H-2" nonimmigrant visa category for temporary foreign agricultural and nonagricultural workers. *See* Cong. Res. Serv., H-2A and H-2B Temporary Worker Visas: Policy and Related Issues, May 11, 2023, at 1, https://crsreports.congress.gov/product/pdf/R/R44849. In 1986, as part of the Immigration Reform and Control Act of 1986 (IRCA), Congress amended the INA to separate the pre-existing nonimmigrant visa program for temporary and seasonal employment into two separate programs, and provide a greater role for the Secretary of Labor in the "H-2A" program for agricultural workers, named after the relevant statutory provisions that created it. Pub. L. 99-603, 100 Stat. 3359 (1986) (codified at 8 U.S.C. § 1101(a)(15)(H)(ii)(a); §1188). Since then, the H-2A

program has grown exponentially, with more than 290,000 H-2A visas issued in Fiscal Year 2022. *See* Cong. Res. Serv. at 4–5.

The H-2A process involves multiple agencies, but it begins with DOL. By statute, before an employer can file a petition for a visa with the Department of Homeland Security, the employer must apply for, and obtain, certification from DOL that "(A) there are not sufficient workers who are able, willing, and qualified, and who will be available at the time and place needed, to perform the labor or services involved in the petition, and (B) the employment of the alien in such labor or services will not adversely affect the wages and working conditions of workers in the United States similarly employed." 8 U.S.C. § 1188(a)(1). The statute directs DOL to consider a number of factors in determining whether or not to grant such a certification, imposes a number of conditions and obligations on employers who employ H-2A labor, and authorizes the Secretary "to take such actions, including imposing appropriate penalties and seeking appropriate injunctive relief and specific performance of contractual obligations, as may be necessary to assure employer compliance with terms and conditions of employment under this section." 8 U.S.C. § 1188(g)(2); *see also id.* §§ 1188(c), (d). The statute also directs the Secretary to "prescribe[]" "criteria for the recruitment of eligible individuals." *Id.* §1188(c)(3)(A)(i).

Recognizing that "[t]he amendments to the INA made by IRCA codify DOL's role in the temporary alien agricultural labor certification process," DOL first published H-2A regulations in 1987. DOL, Interim Final Rule, Labor Certification Process for the Temporary Employment of Aliens in Agriculture and Logging in the United States, 52 Fed. Reg. 20496, 20496 (June 1, 1987); DOL, Interim Final Rule, Enforcement of Contractual Obligations for Temporary Alien Agricultural Workers Admitted Under Section 216 of the Immigration and Nationality Act, 52 Fed. Reg. 20524 (June 1, 1987). In these Rules, the Secretary specified that state workforce agencies,

which receive receive funding as part of the Employment Service system pursuant to the Wagner-Peyser Act, 29 U.S.C. §§ 49–49n, to provide recruitment and other services for employers. These regulations have been updated periodically throughout the ensuing four decades and have long "include[d] provisions related to housing, meals, work-related equipment, and transportation." *Arriaga v. Fla. Pac. Farms, LLC*, 305 F.3d 1228, 1232–33 (11th Cir. 2002); *see, e.g.*, DOL, Final Rule, Temporary Agricultural Employment of H-2A Nonimmigrants in the United States, 87 Fed. Reg. 61660 (Oct. 12, 2022); DOL, Final Rule, Temporary Agricultural Employment of H-2A Aliens in the United States, 75 Fed. Reg. 6884 (Feb. 12, 2010); DOL, Final Rule, Temporary Agricultural Employment of H-2A Aliens in the United States; Modernizing the Labor Certification Process and Enforcement, 73 Fed. Reg. 77110 (Dec. 18, 2008).

**III.   The Challenged Rule**

In September 2023, DOL issued a proposal to amend the H-2A regulations in order to "help prevent exploitation and abuse of agricultural workers and ensure that unscrupulous employers do not financially gain from their violations or contribute to economic and workforce instability by circumventing the law, both of which would adversely affect the wages and working conditions of workers in the United States similarly employed, and undermines the Department's ability to determine whether there are, in fact, insufficient U.S. workers for proposed H-2A jobs." DOL, Notice of Proposed Rulemaking, Improving Protections for Workers in Temporary Agricultural Employment in the United States, 88 Fed. Reg. 63750, 63753 (Sept. 15, 2023). After a public comment period, the agency issued a final rule. 2024 Rule, 89 Fed. Reg. 33898. The Rule's operative provisions amend preexisting program regulations on a range of topics. Some provisions particularly relevant to the proposed intervenors are discussed here.

First, DOL altered the procedure for when the agency's annual changes to the "Adverse Effect Wage Rate" takes effect. Previously, when the agency published a new such rate—which often serves as the minimum wage required for a particular H-2A job—in the Federal Register, it would include a future "effective date." 20 C.F.R. § 655.120(b)(3) (2023). Under the amended regulation, any increased rate is effective as of the date of publication. 2024 Rule, 89 Fed. Reg. at 34060 (20 C.F.R. § 655.120(b)(3)).

In addition, the Rule makes amendments to 20 C.F.R. part 122, which governs the contents of job offers, including by altering existing safety requirements for employer-provided transportation to explicitly include a seat belt requirement. *Id.* (20 C.F.R. § 655.122(h)(4)(ii)).

The Rule also amends 20 C.F.R. § 655.135, which sets out the required assurances and obligations of H-2A employers. *Id.* at 34062–63. The prior version of the rule prohibited employers from retaliation based on the filing of administrative complaints or testimony, invoking any H-2A statutory or regulatory rights, or seeking legal assistance regarding the H-2A program. *See* 20 C.F.R. § 655.135(h) (2022). To these prohibited bases of retaliation, the agency added consultation with a "key service provider," defined to include healthcare workers, clergy, attorneys, law enforcement, and others; and the filing of a complaint or participation in an investigation or proceeding relating to the violation of any federal, state, or local law or regulation. 2024 Rule, 89 Fed. Reg. at 34059, 34062 (20 C.F.R. § 655.135(h)(1)).

The Rule also adds a new provision prohibiting employers from intimidating or retaliating against any agricultural employee on the basis that they had engaged in, or refused to engage in, "activities related to self-organization" or "other concerted activities for the purpose of mutual aid or protection relating to wages or working conditions," or because they had refused to attend, listen to, or view employer-sponsored communication regarding such activity. *Id.* at 34062–63

11

(§ 655.135(h)(2)). Employers are also required to permit any H-2A worker or domestic worker in corresponding employment to designate a representative to attend any investigatory interview that might lead to disciplinary action and to permit workers to receive advice and assistance from that representative during such interviews. *Id.* at 34063 (§ 655.135(m)). Additionally, the Rule requires employers to permit workers to invite guests into employer-furnished housing, outside their workday, subject to reasonable restrictions designed to protect worker safety or prevent interference with other workers' enjoyment of housing areas. *Id.* (§ 655.135(n)). The Rule also expands the existing provisions restricting employers from holding or confiscating a worker's passport or visa. *Id.* (§ 635.135(o)).

\*   \*   \*

The Rule has a June 28, 2024, effective date, but the changes to 20 C.F.R. part 655, subpart B, will not apply to job clearance orders and associated H-2A applications submitted before August 29, 2024. 89 Fed. Reg. at 33904. DOL has since stated that it will also not enforce the Rule's revisions to 29 C.F.R. § 501.4(a), the non-retaliation provision in the "enforcement" regulations, until August 29, 2024. ECF 28 (Joint Motion to Vacate) at ¶ 4 (citing Wage and Hour Division, Final Rule, Improving Protections for Workers in Temporary Agricultural Employment in the United States, https://www.dol.gov/agencies/whd/agriculture/h2a/final-rule).

**IV.   This Litigation**

Plaintiffs—seventeen states, an agricultural employer, and an association of agricultural employees—commenced this action against DOL and several DOL officials on June 10, 2024. Their complaint seeks vacatur of the Rule in its entirety and alleges four claims under the Administrative Procedure Act (APA). First, they argue that the Rule is contrary to the National Labor Relations Act (NLRA). ECF 1 at ¶¶ 93–101. Both their second and third claims argue that

12

the Rule exceeds statutory authority. *Id.* at ¶¶ 102–126. Finally, they argue that the Rule is arbitrary and capricious. *Id.* at ¶¶ 127–43.

On June 13, 2024, Plaintiffs filed a "Motion for Stay/Preliminary Injunction/Temporary Restraining Order," requesting a universal injunction against the enforcement and application of the Rule in its entirety. ECF 19. Defendants' opposition to that motion is due on July 8, 2024, and Plaintiffs' reply is due on July 22, 2024. ECF 29. A hearing on the motion is scheduled for August 2, 2024. *Id.*

## ARGUMENT

**I.     Movants should be granted leave to intervene as of right.**

"Rule 24 is to be given a liberal construction in favor of applicants for intervention." *Auto-Owners Ins. Co. v. Tabby Place Homeowners Ass'n*, No. CV421-346, 2022 WL 17327497 (S.D. Ga. Nov. 29, 2022) (quoting *First Nat'l Bank of Tennessee v. Pinnacle Prop. V, LLC*, 2011 WL 13221046, at *2 (N.D. Ga. Nov. 1, 2011)); *see also Fed. Sav. & Loan Ins. Corp. v. Falls Chase Spec. Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993) ("Any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors."). "Parties seeking to intervene under Rule 24(a)(2) must show that: (1) their application to intervene is timely; (2) they have an interest relating to the property or transaction which is the subject of the action; (3) they are so situated that disposition of the action, as a practical matter, may impede or impair their ability to protect that interest; and (4) their interest is represented inadequately by the existing parties to the suit." *Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 695–96 (11th Cir. 2017) (quoting *Stone v. First Union Corp.*, 371 F.3d 1305, 1308–09 (11th Cir. 2004) (alterations omitted)). All four requirements are satisfied here.

13

### A. The motion is timely.

In considering whether a motion to intervene is timely, courts consider four factors:

1. The length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene;

2. The extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case;

3. The extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied; and

4. The existence of unusual circumstances militating either for or against a determination that the application is timely.

*Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1294 (11th Cir. 2017) (quoting *Meek v. Metro. Dade Cnty.*, 985 F.2d 1471, 1478–79 (11th Cir. 1993), abrogated on other grounds by *Dillard v. Chilton Cnty. Comm'n*, 495 F.3d 1324, 1331–32 (11th Cir. 2007)). Here, all four factors weigh in favor of a finding of timeliness. Movants are filing this motion within weeks of the commencement of the action. *Cf. Ohio Sec. Ins. Co. v. Newsome*, No. CV 114-125, 2015 WL 1419341, at *6 (S.D. Ga. Mar. 27, 2015) (holding a "several month delay" did not make a motion untimely). In addition, this case is at its earliest stages; Defendants have not even filed a response to Plaintiffs' complaint. As an attachment to this motion, Movants have submitted their proposed opposition to the motion for a preliminary injunction, before the current Defendants' opposition is due, which guards against delay at this stage.[1] As such "intervention will [not] disrupt the current litigation schedule under which the current parties are operating," or otherwise

---

[1] Plaintiffs filed a 36-page memorandum in support of their preliminary injunction motion, and the Court previously granted Defendants leave to file a 45-page brief in opposition to the preliminary injunction motion and Plaintiffs leave to file a 30-page brief in reply. ECF 29. Reflecting the number of issues raised by the Plaintiffs and the number of pages permitted for the parties' memoranda, Movants' proposed memorandum is 40 pages.

prejudice the parties. *Ga. River Network v. U.S. Army Corps of Eng'rs*, No. 4:10-cv-00267, 2011 WL 3320514, at *2 (S.D. Ga. Aug. 1, 2011). This is particularly true since, as an Administrative Procedure Act case, "the parties are limited to the administrative record, so there are no discovery issues." *Id.* (citation omitted). As discussed below, though, there is a risk of prejudice to Movants should intervention not be allowed.

### B. Movants have relevant interests in the action that would be impaired by an adverse decision.

CDM, Mr. Rodriguez, and Mr. Sánchez have sufficient interests in the Rule for purposes of Rule 24(a), and Plaintiffs' requested relief would impair that interest. *See Howard v. McLucas*, 782 F.2d 956, 958–59 (11th Cir. 1986) (holding putative intervenors had protectable interest based on harm that would be caused by remedy sought).

"[W]here a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit," that party has a sufficient interest to intervene in that litigation as of right. *Crossroads Grassroots Policy Strategies v. FEC*, 788 F.3d 312, 317 (D.C. Cir. 2015); *see also Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 569 (5th Cir. 2016) (holding that beneficiaries of a regulation have a sufficient interest in defending that regulation to intervene under Rule 24(a); *Texas v. United States*, 805 F.3d 653, 659 (5th Cir. 2015) (same). Applying this principle, courts regularly grant leave to intervene to workers and worker organizations to defend statutes and regulations that provide worker protections. *See, e.g.*, *Nat'l Mining Ass'n v. United Steel Workers,* 985 F.3d 1309, 1315 n.3 (11th Cir. 2021) (noting court had granted labor unions' "motion for leave to intervene on the side of the Department of Labor" to defend rule); *Allied Concrete & Supply Co. v. Baker*, 904 F.3d 1053, 1068 (9th Cir. 2018) (holding labor union satisfied requirements for intervention as of right based on its members' interests in obtaining the prevailing wage challenged in the litigation). H-

15

2A workers and worker organizations have been granted leave to intervene to defend previous H-2A regulations. *See, e.g.*, *Fla. Fruit & Vegetable Ass'n v. Brock*, 771 F.2d 1455 (11th Cir. 1985) (noting workers' intervention); *Frederick Cnty. Fruit Growers Ass'n v. Martin*, 968 F.2d 1265 (D.C. Cir. 1992) (same); *Peri & Sons Farms, Inc. v. Acosta*, 374 F. Supp. 3d 63, 68–69 (D.D.C. 2019) (same).[2]

Movants Rodriguez and Sánchez are undoubtedly beneficiaries of rights that the Rule provides. As discussed above and in their declarations, Mr. Rodriguez and Mr. Sanchez have both experienced many of the abusive practices that DOL has prohibited via the Rule, including delayed wage payment, unsafe employer-provided transportation, retaliation for concerted activity, and interference with their ability to meet with government outreach workers. These practices are common, and, absent the Rule, are likely to continue in H-2A employment. *See, e.g.*, Rule, 89 Fed. Reg. at 34004 (discussing comment that "retaliation against workers is very common"); *id.* at 34014 (discussing studies showing common practices). Mr. Rodriguez and Mr. Sánchez thus have interests in defending the Rule, as it will provide them with protections from these practices in future employment.

CDM also has a protectable interest in the Rule. "Harm caused to an organization's programs by the invalidation of a rule" is a sufficient basis for allowing an organization to

---

[2] Courts have regularly held that applicants for and recipients of employment-based visas are have standing with respect to agency actions regarding employment-based visa programs, and that their interests are protected by the INA. As the Eleventh Circuit has held, "[e]ven assuming that Congress intended to benefit American employers and protect jobs for American citizens in creating the framework for employment visas, that does not rule out that Congress acted with the intent to regulate or protect immigrants' interests." *Kurapati v. U.S. Bureau of Citizenship & Immigr. Servs.*, 775 F.3d 1255, 1261 (11th Cir. 2014); s*ee also Shalom Pentecostal Church v. Acting Sec'y U.S. DHS*, 783 F.3d 156, 164 (3d Cir. 2015) ("The text of the INA leaves no doubt that the interests of employment-based visa petition applicants … are directly related to the purposes of the INA."); *De Jesus Ramirez v. Reich*, 156 F.3d 1273, 1276 (D.C. Cir. 1996) (holding that H-2A workers had standing to challenge foreign labor certification decisions).

intervene to defend the rule. *Associated Dog Clubs of N.Y. State v. Vilsack*, 44 F. Supp. 3d 1, 4–5 (D.D.C. 2014). While CDM is not a labor union and does not engage in collective bargaining, it has experienced difficulties in providing services and education to H-2A and other workers as a result of employer intimidation, fears of retaliation, and employer restrictions on workers' access to services. *See* Micah-Jones Decl. ¶¶ 8–10; CDM Comment at 9.[3] CDM's inability to provide these services makes it less likely that H-2A employers will be held accountable for violations of their responsibilities under the H-2A program. *See* Coalition Comment at 23. The Rule's provisions protecting workers from retaliation based on the fact that they have consulted with CDM staff providing legal, educational, or other services, 20 C.F.R. § 655.135(h)(1)(v), or based on the fact that they have participated in self-organization or other concerted activities, *id* § 655.135(h)(2)(i), will make it easier for CDM to conduct its work. Additionally, by requiring employers to permit workers to invite, or accept at their discretion, guests to their living quarters in worker housing as well as common areas outside of the workers' workday, 20 C.F.R. § 655.135(n), CDM will find it easier to engage with workers and fulfill its organizational mission. *Cf. La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022) (holding organization had protectable interest where challenged statute would help organization carry out its activities).

Should the Court grant Plaintiffs' requested relief of a vacatur—or, in the interim, a preliminary injunction—Movants would lose the protections provided for by the Rule, satisfying the third element of the intervention test. *See, e.g.*, *Allied Concrete & Supply*, 904 F.3d at 1068 (holding that district court's invalidation of a prevailing wage law would "clearly impair" labor union's "interest in the right to a prevailing wage").

---

[3] "Although [CDM] do[es] not assert that [its] participation in the administrative process automatically creates an intervention right, it is a factor courts have considered in applying the interest test." *Georgia Aquarium, Inc. v. Pritzker*, 309 F.R.D. 680, 690 (N.D. Ga. 2014).

### C. The existing parties do not adequately represent Movants' interests.

"The inadequate representation requirement should be treated as minimal and is satisfied unless it is clear that the existing parties will provide adequate representation." *Huff v. Comm'r of IRS*, 743 F.3d 790, 800 (11th Cir. 2014) (internal quotation marks omitted). An intervenor need only show that existing parties' "representation of their interests 'may be' inadequate." *Tech. Training Assocs.*, 874 F.3d at 697 (quoting *Clark v. Putnam Cnty.*, 168 F.3d 458, 461 (11th Cir. 1999)); *see also Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196 (2022) (recognizing that the inadequate representation requirement "present[s] proposed intervenors with only a minimal challenge"). That minimal burden is satisfied here.

Even where government defendants and private parties seek the same ultimate relief, those interests are not identical, as the governmental defendants "ha[ve] to bear in mind broader public-policy implications" than the private putative intervenors. *Berger*, 597 U.S. at 196 (discussing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538–39 (1972)); *see also Huff*, 743 F.3d at 800 (noting private parties' "pecuniary interest is qualitatively different from" government's interests in administration of tax system); *CSX Transp., Inc. v. Georgia Pub. Serv. Comm'n*, 944 F. Supp. 1573, 1578 (N.D. Ga. 1996) (recognizing "the interests of a government entity 'are likely to diverge from those of a private intervenor'" (quoting *Meek*, 985 F.2d at 1478)). That Defendants' and Movants' interest are not identical here is demonstrated by DOL's repeated assertions that various provisions of the Rule represented an attempt to "balance" the interests of employers and workers. *See, e.g.*, 89 Fed. Reg. at 33950, 34038, 34039. The effort to "balance" workers' interests against others' "could result in different litigation decisions" than those that workers themselves would make. *Nat'l Wildlife Fed'n v. Souza*, No. 08-14115-CIV, 2008 WL 11331895, at *2 (S.D. Fla. May 16, 2008) (granting motion to intervene to defend agency action). And "the government's

18

general interest in getting a difficult situation resolved properly may not result in adequate representation to [Movants'] specific interests." *Coastal Conservation Ass'n v. Locke*, No. 209-CV-641-FTM-29SPC, 2010 WL 1407680, at *2 (M.D. Fla. Apr. 6, 2010). Indeed, DOL has already agreed to delay the enforcement of certain provisions of the Rule until August 29, 2024. *See* ECF 28. Under the liberal "may be" inadequate standard, this is a sufficient basis for intervention.

## II.     In the alternative, Movants should be granted permissive leave to intervene.

"Where a party is not entitled to intervene as of right, subsection (b) of Federal Rule of Civil Procedure 24 gives a court discretion to nonetheless permit the party to intervene, on timely motion, … 'when [the] applicant's claim or defense and the main action have a question of law or fact in common.'" *Georgia v. Biden*, 574 F. Supp. 3d 1337, 1347 (S.D. Ga. 2021) (quoting Fed. R. Civ. P. 24(b)), *aff'd in part and rev'd in part on other grounds*, 46 F.4th 1283 (11th Cir. 2022). "It is wholly within the Court's discretion to allow permissive intervention under Rule 24(b)," and the rule "instructs only that the Court must 'consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* (quoting Fed. R. Civ. P. 24(b)(3)).

Should the Court find Movants have not met the Rule 24(a) standard, it should exercise its discretion to grant Movants leave to intervene under Rule 24(b). *See N.C. Growers' Ass'n v. Solis*, No. 1:09CV411, 2009 WL 4729113, at *1 (M.D.N.C. Dec. 3, 2009) (granting farmworker union and members leave to intervene in challenge to previous iteration of H-2A regulations under Rule 24(b)). Movants satisfy the commonality standard required by Rule 24(b), "because they intend to defend the [challenged] Rule based on the same law and facts that the existing parties to the litigation have already raised." *Alabama v. U.S. Dep't of Com.*, No. 2:18-CV-772-RDP, 2018 WL 6570879, at *3 (N.D. Ala. Dec. 13, 2018); *see also Cyclops Vapors 2, LLC v. FDA*, Civ. Act. No. 2:16cv556-MHT, 2018 WL 1434823, at *3 (M.D. Ala. Mar. 22, 2018) (granting public health

19

groups permissive intervention to defend rule); *Georgia Aquarium*, 309 F.R.D. at 690–91 (granting permissive intervention to environmental groups seeking to defend agency action). And as discussed above, given that the action was filed mere weeks ago and remains at its earliest stages, and Movants have committed to complying with the same deadlines as Defendants, intervention will not delay or prejudice the adjudication of the original parties' rights.

## CONCLUSION

For the foregoing reasons, the Court should grant CDM, Mr. Rodriguez, and Mr. Sánchez leave to intervene as defendants in this action.

Dated: July 5, 2024

Adam R. Pulver
DC Bar No. 1020475
(*pro hac vice* motion forthcoming)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org

Respectfully submitted,

s/ Daniel Werner
Daniel Werner
Ga. Bar No. 422070
Radford Scott LLP
315 W. Ponce de Leon Ave., Suite 180
Decatur, GA 30030
(678) 271-0304
dwerner@radfordscott.com

*Counsel for Proposed Intervenor-Defendants*