IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| State of KANSAS, | ) | |
| *et al*, | ) | No. 2:24-cv-76-LGW-GWC |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| The UNITED STATES | ) | |
| DEPARTMENT OF LABOR, | ) | |
| *et al*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION .................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

I.   The Rule is Contrary to Federal Law .......................................................................... 2

   A.   The Rule Violates a Federal Statute ...................................................................... 2

      1.   The Rule Does Mirror (and Violate) the NLRA ............................................... 3

      2.   DOL's Arguments on Preemption Have No Merit ........................................... 4

   B.   The Rule is not authorized by Section 1188 .......................................................... 6

      1.   Congress Did not Delegate "Broad" Authority to DOL .................................. 6

      2.   The Major Questions Doctrine Cuts Against Defendants' Argument ............. 11

II.   The Rule is Arbitrary and Capricious .......................................................................... 16

III.   All Plaintiffs have Standing ........................................................................................ 17

   A. At Least One Plaintiff Inarguably Has Standing ..................................................... 18

   B. Plaintiff States Have Standing ................................................................................ 19

IV.   The Court Should Vacate the Entire Rule .................................................................. 21

   A. Vacatur is the appropriate remedy ........................................................................ 22

   B. Plaintiffs are also entitled to a permanent injunction ........................................... 25

   C. The Rule cannot be severed ................................................................................... 27

CONCLUSION ..................................................................................................................... 29

## TABLE OF AUTHORITIES

**Cases**

*AFL–CIO v. Brock*, 835 F.2d 912 (D.C. Cir. 1987) ..................................................... 10

*AFL-CIO v. Chao*, 227 F. Supp. 2d 102 (D.D.C. 2002) .............................................. 11

*AFL-CIO v. Dole*, 923 F.2d 182 (D.C. Cir. 1991) ...................................................... 10

*Airlines for Am. v. Dep't of Transp.*, 110 F.4th 672 (5th Cir. 2024) ........................... 14

*Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758 (2021) ........... 12

*Alabama v. CMS*, 674 F.3d 1241 (11th Cir 2012) ...................................................... 23

*Alabama v. U.S. Sec'y of Educ.*, No. 24-12444, 2024 WL 3981994 (11th Cir. Aug. 22, 2024) .. 28

*Alexander v. Sandoval*, 532 U.S. 275 (2001) ............................................................... 2

*Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320 (2006) .................. 29

*Bay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) ............................................ 25

*Bayou Lawn & Landscape Servs. V. Sec'y of Lab.*, 713 F.3d 1080 (11th Cir. 2013) ............... 7, 11

*Biden v. Nebraska*, 143 S. Ct. 2355 (2023) ................................................................ 18

*Bittner v. United States*, 598 U.S. 85 (2023) ............................................................. 13

*Black Warrior Riverkeeper Inc. v U.S. Army Corps of Engineers*, 781 F.3d 1271 (11th Cir. 2015) ............................................................................................................................. 23

*Brigham City v. Stuart*, 547 U.S. 398 (2006) ............................................................... 6

*Burnett Specialists v. Abruzzo*, No. 4:22-cv-00605, 2023 U.S. Dist. LEXIS 154566 (E.D. Tex. Aug. 31, 2023) .......................................................................................................... 4

*Canadian Pac. Ry. v. Surface Transp. Bd.*, 197 F.3d 1165 (D.C. Cir. 1999) ............... 10

*Career Colls. & Sch. of Tex. v. United States Dep't of Educ.*, 98 F.4th 220 (5th Cir. 2024) . 15, 22

*Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996) ..................... 4

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837 (1984) ........................ 10

*City of Chicago v. Fulton*, 592 U.S. 154 (2021) ........................................................... 8

*Compulife Software, Inc. v. Newman*, 111 F.4th 1147 (11th Cir. 2024) ...................... 25

*Corley v. United States*, 556 U.S. 303 (2009) .............................................................. 8

*Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 144 S. Ct. 2440 (2024) ........... 22, 24

*D.C. Fed'n of Civic Ass'ns v. Volpe*, 459 F.2d 1231 (D.C. Cir. 1971) ......................... 16

*Dep't. of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1 (2020) ............ 10, 25

*Encino Motorcars, LLC v. Navarro*, 579 U.S. 211 (2016) .......................................... 16

*F.E.C. v. Cruz*, 596 U.S. 289 (2022) .......................................................................... 22

*Florida v. Becerra*, 544 F. Supp. 3d 1241 (M.D. Fla. 2021) ...................................... 20

*Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271 (11th Cir. 2021) ................. 26

*Florida v. United States*, 660 F. Supp. 3d 1239 (N.D. Fla. 2023) ........................ 20, 22

*Garcia-Celestino v. Ruiz Harvesting, Inc.*, 843 F.3d 1276 (11th Cir. 2016) ............... 15

*Georgia v. President of the United States*, 46 F.4th 1283 (11th Cir. 2022) ............. 11, 19, 20, 26

*Griffin v. HM Fla.-ORL, LLC*, 144 S. Ct. 1 (2023) .................................................... 22

*Health Freedom Def. Fund, Inc. v. Biden*, 599 F. Supp. 3d 1144 (M.D. Fla. 2022) ........ 22, 23, 27

*Henderson v. Stalder*, 287 F.3d 374 (5th Cir. 2002) ................................................... 21

*Hewitt v. Comm'r of IRS*, 21 F.4th 1336 (11th Cir. 2021) ......................................... 17

*Johnson v. Copyright Royalty Bd.*, 969 F.3d 363 (D.C. Cir. 2020) .............................................. 10

*Kansas v. Biden*, No. 24-1057-DDC-ADM, 2024 WL 2880404 (D. Kan. June 7, 2024) ............ 20

*Kansas v. Dep't of Educ.*, -- F. Supp. 3d --, 2024 U.S. Dist. LEXIS 127751 (D. Kan. July 19, 2024) ..................................................................................................................................... 27

*Kansas v. United States Dep't of Educ.*, No. 24-4041-JWB, 2024 WL 3273285 (D. Kan. July 2, 2024) ..................................................................................................................................... 29

*Kiakombua v. Wolf*, 498 F. Supp. 3d 1 (D.D.C. 2020) ....................................................... 22

*L.A. Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644 (9th Cir.2011) ............................................ 21

*Lewis v. Casey* ................................................................................................................................ 18

*Loper Bright Enters .v. Raimondo*, 144 S. Ct. 2244 (2024) ........................................................ 7, 9

*Markva v. Haveman*, 317 F.3d 547 (6th Cir. 2003) .................................................................... 21

*Mayor of Baltimore v. Azar*, 973 F.3d 258 (4th Cir. 2020) ........................................................ 28

*MD/DC/DE Broadcasters Ass'n v. F.C.C.*, 236 F.3d 13 (D.C. Cir. 2001) ................................... 28

*Mendoza v. Perez*, 754 F.3d 1002 (D.C. Cir. 2014) .................................................................... 10

*Merck & Co., Inc. v. Dep't of Health & Hum. Servs.*, 962 F.3d 531 (D.C. Cir. 2020) ............... 14

*Missouri v. Biden*, No. 4:24-CV-00520-JAR, 2024 WL 3104514 (E.D. Mo. June 24, 2024) 18, 20

*Monsanto Co. v. Geerton Seed Farms*, 561 U.S. 139 (2010) ...................................................... 23

*N.L.R.B. v. Noel Canning*, 573 U.S. 513 (2014) ........................................................................ 14

*N.M. Health Connections v. Dep't of Health & Hum. Servs.*, 340 F. Supp. 3d 1112 (D.N.M. 2018) ..................................................................................................................................... 22, 24

*NCAA v. Governor of N.J.*, 730 F.3d 208 (3d Cir. 2013) ........................................................... 21

*Nebraska v. Biden*, 600 U.S. 477 (2023) .............................................................................. 13, 15

*New York v. Scalia*, 490 F. Supp. 3d 748 (S.D.N.Y. 2020) ........................................................ 21

*NLRB v. J. Weingarten, Inc.*, 420 U.S. 251 (1975) ....................................................................... 3

*Nuziard v. Minority Business Development Agency*, No. 4:23-CV-00278-P, 2024 U.S. Dist. LEXIS 38050 (N.D. Tex. Mar. 5, 2024) ...................................................................... 24, 27

*Rapanos v. United States*, 547 U.S. 715 (2006) ......................................................................... 14

*Rest. L. Ctr. v. United States Dep't of Lab.*, 115 F.4th 396 (5th Cir. 2024) ............................... 15

*Rodriguez v. Branch Banking & Trust Co.*, 46 F.4th 1247 (11th Cir. 2022) ................................ 4

*Ross v. Bank of Am., N.A. (USA)*, 524 F.3d 217 (2d Cir. 2008) ................................................ 21

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) ......................................................................... 13

*Tennessee v. Cardona*, No. 24-5588, 2024 WL 3453880 (6th Cir. July 17, 2024) ..................... 28

*Tennessee v. Cardona*, No. CV 2: 24-072-DCR, 2024 WL 3019146 (E.D. Ky. June 17, 2024) . 29

*Texas v. United States*, 50 F.4th 498 (5th Cir. 2022) ................................................................. 20

*UARG v. EPA*, 573 U.S. 302 (2014) ......................................................................................... 13

*UAW Labor Employment & Training Corp. v. Chao*, 325 F.3d 360 (D.C. Cir. 2003) .................. 5

*United Farm Workers v. Solis*, 697 F. Supp. 2d 5 (D.D.C. 2010) .............................................. 11

*United Farm Workers v. United States Dep't of Lab.*, 509 F. Supp. 3d 1225 (E.D. Cal. 2020)... 11

*United States v. Texas*, 599 U.S. 670 (2023) ....................................................................... 18, 24

*W. Virginia v. E.P.A*, 597 U.S. 697 (2022) ................................................................... 12, 14, 15

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) .............................................................. 23

iv

**Statutes**

29 U.S.C. § 152 ................................................................................................ 2
29 U.S.C. § 157 ................................................................................................ 3
5 U.S.C. § 1188 ............................................................................................... 11
5 U.S.C. § 553 .................................................................................................. 9
5 U.S.C. § 706 ................................................................................................. 25
8 U.S.C. § 1101 ................................................................................................ 8
8 U.S.C. § 1188 ............................................................................................. 7, 8

**Other Authorities**

A. Scalia and B. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) .................... 4, 8
Charles Alan Wright Et Al., Federal Practice and Procedure (3d ed. 2015) ............................... 21
Mila Sohoni, *The Past and Future of Universal Vacatur*,133 Yale L. J. 2305 (2024)................ 22
Mila Sohoni, *The Power to Vacate A Rule*, 88 Geo. Wash. L. Rev. 1121 (2020)....................... 22
Ronald M. Levin, Vacatur, Nationwide Injunctions, and the Evolving APA, 98 Notre Dame L.
    Rev. 1997 (2023)......................................................................................... 24

## INTRODUCTION

Defendants seek to revolutionize the National Labor Relations Act (NLRA) by expressly undoing a compromise that has existed for over 80 years that excluded agricultural employees. Defendants squarely admit that DOL's Rule, which this Court correctly found "conflicts with the NLRA" (Prelim. Inj. Order at 19) applies across the board to huge swaths of agricultural employees, both H-2A workers and their American counterparts. DOL's Rule violates the NLRA, exceeds the agency's rulemaking authority under the Immigration and Naturalization Act (INA) and the Immigration Reform and Control Act (IRCA) amendments to the INA, violates the major questions doctrine, and is arbitrary and capricious under the Administrative Procedure Act (APA). Nothing in Defendants' Motion changes any of that. The only action left by the Court at this point is to end the Rule altogether with vacatur, a remedy that cannot be party-limited.

Defendants' motion for summary judgment denies the unlawfulness of its Rule and requests the Court to rule against Plaintiffs on all counts. As with their earlier argument opposing Plaintiffs' request for a preliminary injunction, however, Defendants cannot save their unlawful Rule. It still violates the NLRA, as this Court already held, and Defendants still fail to demonstrate statutory authority or explain how the Rule was developed through reasoned decision-making. Nothing has changed since the Rule was preliminarily enjoined to make it lawful.

Because the Court is unlikely to accept Defendants' arguments on the merits, they attempt to limit the damage by challenging the standing of the Plaintiff States. As Defendants concede the standing of the Private Plaintiffs, there is no reason to revisit this issue. Once the Court confirms its jurisdiction over any of the Plaintiffs, it can and should proceed to the merits

and vacate the Final Rule. Regardless, Plaintiff States also have standing because they are injured through administrative costs as a direct result of the Rule.

Defendants argue that only the unlawful parts of the Final Rule should be vacated. But that is not how vacatur, which removes the legal source for the Rule altogether, works. And they make no attempt to explain how or why the Rule could operate without its most important part: a system of protections for collective bargaining rights of foreign farm workers. In any case, Plaintiffs do not challenge some unlawful application of the Final Rule to some individuals— they challenge the legality of the entire Rule. The Final Rule, in its entirety, is unlawful, and the APA authorizes vacatur of unlawful rules, as well as a permanent injunction. This Court should find for Plaintiffs on all counts and vacate the entire Final Rule.

**ARGUMENT**

### I.    The Rule is Contrary to Federal Law

The Rule violates the NLRA. That's game, set, match and enough to find it unlawful. The Court found precisely that when it issued its preliminary injunction. But the Rule is also unlawful because it exceeds DOL's statutory authority and violates the major questions doctrine.

#### A.  The Rule Violates a Federal Statute

As this Court has already held, the Rule violates the NLRA. Prelim. Inj. Order at 23-26. Simply, Congress specifically withheld federal collective bargaining protections from agriculture workers, and DOL cannot grant them that right through executive fiat. *See* 29 U.S.C. § 152(3). "Language in a regulation ... may not create a right that Congress has not." *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001). An agency may "play the sorcerer's apprentice but not the sorcerer himself." *Id.* Because the Rule purports to grant a right that Congress did not, it is an unlawful attempt to create law and is invalid. Prelim. Inj. Order at 25.

The Court has already (correctly) rejected Defendants' arguments as to why the Rule does not offend the NLRA, Prelim. Inj. Order at 23-26 and DOL offers nothing to change that holding.

### 1.   The Rule Does Mirror (and Violate) the NLRA

First, the Rule certainly creates the same right to unionize for agriculture workers as the NLRA does for other employees. *Contra* Defs.' Op. at 22. The Rule's language "mirrors that of the NLRA." Prelim. Inj. Order at 21. *Compare* 89 Fed. Reg. 34,005 (protecting "concerted activity for mutual aid and protection which encompasses numerous ways that workers can engage, individually or collectively, to enforce their rights."), *with* 29 U.S.C. § 157 (protecting "engag[ing] in [] concerted activities for the purpose of collective bargaining or other mutual aid or protection."). DOL's switch of a couple words was tricky, but the effect of the two provisions is the same: under the Rule, H-2A workers will have the same right to collective bargain as workers covered by the NLRA. The Rule goes a step further in mirroring the rights that have evolved from the text of the NLRA. Specifically, in *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 260–62 (1975), the Supreme Court recognized that the right to engage in concerted activities for mutual aid and protection includes the right to have a representative present at an investigatory interview, a right recognized by the Final Rule. *See* 89 Fed. Reg. at 34011, 34063 (Final Rule's proposed § 655.135(m) requires an employer to give "any H-2A worker or worker in corresponding employment" the opportunity "to designate a representative to attend any investigatory interview that the worker reasonably believes might result in disciplinary action and must permit the worker to receive advice and active assistance from the designated

representative during any such investigatory interview”).[1] Likewise, the Final Rule adopts the NLRB’s General Counsel’s interpretation of rights derivative of the NLRA by prohibiting H-2A employers from holding ‘captive audience’ meetings at which they communicate opinions in opposition to the concerted activity protections provided by the Rule. *Compare* 89 Fed. Reg. at 34068 (the Final Rule’s proposed § 501.4(a)(2)(ii)), *with Burnett Specialists v. Abruzzo*, No. 4:22-cv-00605, 2023 U.S. Dist. LEXIS 154566, at \*2–3 (E.D. Tex. Aug. 31, 2023) (citing Memorandum GC 22-04).

Defendants’ other argument—that that the Rule does not violate the NLRA because the definition of employee only applies to the NLRA, Defs.’ Op. at 26–27—violates the presumption against ineffectiveness in statutory interpretation. This canon holds that a textually permissible interpretation that furthers rather than obstructs the document’s purpose should be favored. *See* A. Scalia and B. Garner, *Reading Law: The Interpretation of Legal Texts* 63-65 (2012). If an agency can do as DOL does here and alters a statutory exclusion through executive action, it effectively neuters that statute and makes it ineffective. The Court should not accept such an interpretation of the statute when Plaintiffs offer an interpretation that furthers the statute’s purpose. *See Rodriguez v. Branch Banking & Trust Co.*, 46 F.4th 1247, 1257 (11th Cir. 2022).

## 2.  DOL’s Arguments on Preemption Have No Merit

Defendants argue that preemption principles allow this Rule and ask the Court to revisit two cases: *Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996), and *UAW*

---

[1] Defendants, in a pair of footnotes, contend that Plaintiffs did not address or contest § 655.135(m) in their opening brief. Defs. Op. at 1 n.1, 9 n.7. This is not true. Plaintiffs’ opening brief clearly identified § 655.135(m), specifically the right of H-2A workers to have a designee present at investigatory interviews, as one of the Final Rule’s provisions that mirror NLRA rights, therefore, rendering the Rule an impermissible exercise of agency authority in conflict with the NLRA’s decision not to extend protection to agricultural laborers. *See* ECF #111 at 4–5.

*Labor Employment & Training Corp. v. Chao*, 325 F.3d 360 (D.C. Cir. 2003). These cases

analyze federal labor regulations under the preemption doctrine in two ways: *Garmon*

preemption, which applies to activities the NLRA protects or prohibits, and *Machinist*

preemption, which applies to activities the NLRA deliberately leaves unregulated. And

Defendants believe the NLRA "left alone" collective bargaining rights for agricultural workers,

while permitting additional regulation. They argue therefore that *Machinist* preemption is not

implicated, and *Garmon* preemption, does not apply because states may protect farm worker

collective bargaining under the NLRA.

Defendants are wrong. None of the labor law preemption cases addresses a provision of

the NLRA that deliberately left open to states a regulatory authority that the statute denied to the

federal government. But that is what the NLRA does for agricultural workers. *Garmon*

preemption applies to the Final Rule because the NLRA's text makes a clear statement about

*federal* authority over collective bargaining rights: employees have these rights and employees

"shall not include" agricultural workers. NLRA leaves open the possibility of state regulation

while foreclosing federal regulation. Thus, DOL's grant of federally protected collective

bargaining rights to agricultural workers straightforwardly violates the NLRA.

Defendants' confusion about the importance of the words "shall not" in the NLRA,

Defs.' Op. at 26 n.17, displays a disregard of the text written by Congress and history of the

NLRA. It was not by accident that Congress exempted agricultural employees while including

virtually all other employees. Congress said what it meant. The rights granted by the NLRA (not

just the NLRA itself) "shall not" apply to this class of workers. Defendants seek to undo that by

regulation.

As Plaintiffs have explained, the NLRA was not a minor provision of an appropriations bill. It was designed to calm serious and oftentimes violent tensions that occurred between workers and management. Against that backdrop, Congress still made a conscious decision nearly 90 years ago to exclude agricultural workers from its protections. It was the result of a delicate series of compromises made at a time when labor unrest was a foremost public issue. Defendants would now undo that legislative compromise, which has endured for nearly a century, with the stroke of a pen.

This Court has already noted that "there is *no* evidence of federal Congressional intent to create a right to collective bargaining for agricultural workers." Prelim. Inj. Order at 25 (emphasis added). Defendants still have not offered any. The obvious conclusion is that Congress did not intend to create a right to unionize for agriculture workers, whether in the NLRA or anywhere else. DOL unconstitutionally oversteps its authority by granting that right.[2]

**B.  The Rule is not authorized by Section 1188**

Even if the Rule did not fly in the face of the NLRA, it would still be unlawful because DOL did not have authority to promulgate it in the first place. Further, it exceeds DOL's statutory authority and violates the major questions doctrine.

**1.  Congress Did not Delegate "Broad" Authority to DOL**

First, Defendants' argument that Congress delegated it "broad" power to promulgate regulations, Defs.' Op. at 15, is a tacit admission that Congress did not grant it the *specific* power to do what it is claiming to have here: to grant the right to unionize to H-2A workers. Thus,

---

[2] States offering protections and rights in addition to those offered by the federal government is permissible and is irrelevant to whether the federal government can do it via agency action. *See Brigham City v. Stuart*, 547 U.S. 398, 409 (2006) (Stevens, J., concurring) ("Federal interests are not offended when a single State elects to provide greater protection for its citizens than the Federal Constitution requires.").

Defendants' must show that (1) Congress did in fact grant it broad authority and (2) authority encompasses the power to grant collective bargaining rights. They fail on both counts.

"Under the APA, it [] 'remains the responsibility of the court to decide whether the law means what the agency says.'" *Loper Bright Enters .v. Raimondo*, 144 S. Ct. 2244, 2261 (2024) (quoting *Perez v. Mortgage Bankers Ass'n.*, 575 U.S. 92, 109 (2015) (Scalia, J., concurring in judgment)). So, the Court has an independent duty to examine a statute and determine whether it actually grants the power DOL is claiming. "Section 706 makes clear that agency interpretations of statutes—like agency interpretations of the Constitution—are *not* entitled to deference." *Id.* (emphasis in original).

Defendants' current argument for statutory authority is 8 U.S.C. § 1188(c)(3)(A). Defs.' Op. at 12. Section 1188(c)(3)(A) only allows DOL to certify that the "criteria for the recruitment of eligible individuals" has been met. Those criteria are merely that there are not enough eligible domestic workers and that foreign workers will not adversely affect similarly situated domestic workers. 8 U.S.C. § 1188(a)(1). Certifying that a criterion has been met is not the same as being delegated rulemaking authority. Even if it was, that power would be narrowly circumscribed to making this simple certification, not invent a whole raft of new substantive rights. This statute does not provide textual support for DOL to devise and confer statutory rights through regulations.

Section 1188(c)(3)(A) does not even directly mention rulemaking at all. *See Bayou Lawn & Landscape Servs. V. Sec'y of Lab.*, 713 F.3d 1080, 1085 (11th Cir. 2013) (finding that consultation authority under the H-2B program contains "no grant of rulemaking authority to

DOL").[3] Yet Congress was explicit when it authorized the Secretary to engage in rulemaking by using the term "regulation" in other contexts. *See* § 1188(a)(1)(2) (DOL can require payment of fee to process applications by regulation) and (c)(4) (DOL can issue regulations to set housing requirements). Elsewhere, Congress did clearly, but narrowly, authorized DOL to define the term "agricultural labor or services." *See* 8 U.S.C. § 1101(a)(15)(H)(ii)(a).

To argue that Congress also gave it separate and far greater authority to broadly regulate the H-2A program—which would also include the power to regulate all of these narrower aspects of the program—violates the anti-surplusage canon. *See* Scalia & Garner, *supra* at 176-179 (explaining the surplusage canon); *Corley v. United States*, 556 U.S. 303, 314 (2009) (The more specific provisions would be "superfluous, void or insignificant"). Simply stated, if § 1188(c)(3)(A) provided the sort of broad rulemaking authority Defendants claim, then it would obviate the need for these provisions that gave DOL narrow rulemaking authority over, for instance, housing requirements or defining labor services. Because Defendants' interpretation would render superfluous another part of the same statutory scheme, the anti-surplusage canon holds special force. *See City of Chicago v. Fulton*, 592 U.S. 154, 159 (2021).

Defendants are wrong to call this "broad authority" at all. Defs.' Op. at 11. The language in § 1188(c)(3)(A) looks nothing like the sort of broad delegations recognized by the Court in *Loper Bright*. The Court observed that when Congress intentionally assigns broad flexibility to an agency to interpret a statute, it uses words like "necessary" or "appropriate" or "reasonable,"

---

[3] Defendants are correct that *Bayou Lawn* recognized that DOL has rulemaking authority under the H-2A program. Defs.' Op. at 16. But the court ruled that DOL's authority stemmed from 8 U.S.C. § 1101(a)(15)(H)(ii)(a), *not* § 1188, a statute not even cited to Defendants for support of this Rule. This provision merely allows DOL to define, "agricultural labor or services." Plaintiffs do not dispute that DOL may define these terms by regulation. That is not what they did in this Rule.

that are found nowhere in § 1188. *See Loper Bright*, 144 S. Ct. at 2263. Again, § 1188(c)(3)(A)

only empowers DOL to make the certification that migrant workers are necessary and won't

undermine American wages. It does not authorize DOL to act as it sees "necessary,"

"appropriate" or "reasonable" to promote the H-2A program. That is the sort of language

Defendants must point to if they hope to argue that the "best reading of a statute" is that

Congress gave DOL authority broad enough to impart statutory rights under the H-2A program.

*See Loper Bright*, 144 S. Ct. at 2263. They cannot because Congress did not employ these terms,

yet DOL acts as if it did.

Defendants cannot credibly claim that its interpretation of its powers has remained

consistent over time because they have never before thought it could afford such broad worker

protections under § 1188(c). *See* Defs.' Op. at 12-13 (citing *Loper Bright*, 144 S. Ct. at 2258) In

fact, they acknowledge that they did not even mention § 1188(c) when they issued a proposed

rule. *See id.* at 16. They may have relied on § 1188(a) to set other terms and conditions, *see id.* at

13 (citing other terms by rule), but in the 38 years since Congress enacted the IRCA, DOL has

never tried anything remotely like this.

Defendants object to the idea that the Final Rule must reference the actual statutory

authority it is promulgated under. Defs.' Op. at 15-16. But this idea is nothing new. The APA

requires that an agency, whether it receives comments questioning its authority or not, *see id.* at

16, provide the source of its authority to act. *See* 5 U.S.C. § 553(b)(2) ("The notice shall include...

reference to the legal authority under which the rule is proposed[.]"). And because "[i]t is well-

trod ground . . . that [a reviewing court] may sustain agency action only for the reasons invoked

by the agency at the time it took the challenged action," post hoc explanations of DOL's statutory

authority cannot justify the Final Rule. *Johnson v. Copyright Royalty Bd.*, 969 F.3d 363, 390 (D.C.

Cir. 2020) (citing *Dep't. of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 24 (2020)).

In *Johnson*, the Copyright Royalty Board revised an order but never specified which of three

plausible subsections—803(c)(2), 803(c)(4), or 803(c)(6)—it was doing so under. *Id.* at 389.

Simply put, an agency's "[v]acillating gestures to uninvoked authority will not do." *Id.* at 392

(vacating and remanding under the *Regents* framework); *see also Canadian Pac. Ry. v. Surface

Transp. Bd.*, 197 F.3d 1165, 1168 (D.C. Cir. 1999) (declining to analyze agency's assertions of

statutory authority because they were invoked post hoc). DOL failed to invoke the authority

Defendants now claims permit DOL to promulgate the Final Rule. In fact, they acknowledge that

DOL cited a different sub-statute as its source of authority. Defs.' Op. at 16 (admitting "DOL did

not discuss § 1188(c) specifically in the Final Rule"). That is impermissible and warrants vacatur

all on its own.

   Defendants' repeated reliance on *AFL-CIO v. Dole*, 923 F.2d 182, 187 (D.C. Cir. 1991),

for the proposition that they received a "broad' grant of authority, *id.* at 15, is also misguided.

While *Dole* did not expressly defer to the agency interpretation of the statute, the case it relied on

for this proposition did. *See Dole*, 923 F.2d at 185 (citing *AFL–CIO v. Brock*, 835 F.2d 912, 913

n.2 (D.C. Cir. 1987)). *Brock* was decided on step two of *Chevron*, which then required the Court

to defer to any reasonable agency interpretation of an ambiguous statute, even if that

interpretation was not the best reading of the statute. *See* 835 F.2d at 917 (quoting *Chevron,

U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 843 (1984), *overruled by Loper Bright*, 144

S. Ct. 2244)).[4] The *Dole* court did not independently examine the statute to determine if it did in

---

[4] Defendants point out that *Mendoza v. Perez*, 754 F.3d 1002, 1021 (D.C. Cir. 2014), did not
apply *Chevron* deference in upholding an agency action. Defs.' Op. at 14. But *Mendoza* relied
upon *Brock*, which did. *See id.* at 1021-22 (citing *Brock* to support, "[t]he statute explicitly
envisions implementing regulations that will clarify the meaning and application of its
provisions," quoted by Defendants on page 11 of their brief). Also, *Mendoza* was a procedural

fact grant the broad powers the agency claimed. On the other hand, looking at the statute anew, the Eleventh Circuit determined that "Congress granted the Department of Labor (the 'DOL') *limited* rulemaking authority over the agricultural H–2A program." *Bayou Lawn*, 713 F.3d at 1084.[5]

 *Bayou Lawn* is more recent; did not impermissibly defer to the agency; and, most importantly, is binding on this Court—whereas *Dole* is not.[6] The only conclusion: Congress did not grant DOL broad rulemaking power over the H-2A program. Congress certainly did not grant the authority to create collective bargaining rights for migrant agricultural workers.

### 2. The Major Questions Doctrine Cuts Against Defendants' Argument

 And if there was any question over whether DOL had broad rulemaking authority, the major questions doctrine would counsel otherwise. Agencies cannot claim power "beyond what Congress could reasonably be understood to have granted." *Georgia v. President of the United States*, 46 F.4th 1283, 1296 (11th Cir. 2022) (quoting *W. Virginia v. E.P.A*, 597 U.S. 697, 721

---

APA challenge (whether the agency rule should have gone through notice and comment), not a challenge to the substance of the Rule. 754 F.3d at 1009. So, it is unsurprising that *Mendoza* itself did not cite *Chevron*—*Chevron* applied when the court reviewed an agency's interpretation of a statute, not whether an agency had followed procedure correctly.

[5] The Eleventh Circuit—not Plaintiffs, *see* Defs.' Op. at 15 (claiming Plaintiffs described this Court's prior ruling "absurd")—called it "absurd" to read certification authority as reaching rulemaking. *See Bayou Lawn,* 713 F.3d at 1084.

[6] *Dole* dealt with *how* DOL calculated minimum wages—a far less consequential task—not whether the agency had the power to set the minimum wage in the first place. 923 F.2d at 185. Tellingly, Defendants do not cite (and Plaintiffs could not find) any cases that relied on *Dole* for the proposition that DOL has broad rulemaking authority under § 1188 to do anything other than set the minimum wage. On the other hand, it has been cited when similar wage rate challenges are raised. *See, e.g., United Farm Workers v. United States Dep't of Lab.*, 509 F. Supp. 3d 1225, 1244 (E.D. Cal. 2020); *United Farm Workers v. Solis*, 697 F. Supp. 2d 5, 9 (D.D.C. 2010); *United Farm Workers of Am., AFL-CIO v. Chao*, 227 F. Supp. 2d 102, 109 (D.D.C. 2002). And arguably, unlike the Rule here, the minimum wage employers can pay H-2A workers does directly "affect the wages and working conditions of workers in the United States similarly employed." 5 U.S.C. § 1188(a)(1)(B).

(2022)). The major questions doctrine ensures that agencies are not overstepping their constitutional authority. It provides that courts "expect Congress to speak clearly when authorizing an agency to exercise powers of vast economic and political significance." *Id.* at 1295 (quoting *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 764 (2021)).  This Rule is certainly a decision of "vast economic and political significance" for the reasons noted in Plaintiff's original motion for summary judgment.

Defendants' argument that the Final Rule does not violate the NLRA—under the *Garmon*/*Machinist* preemption analysis they urge on the Court—also demonstrates why the major questions doctrine should apply to the Final Rule. The major questions doctrine is triggered when an agency asserts authority to regulate a domain of traditional state authority. *See W. Virginia v. E.P.A.*, 597 U.S. at 746–48 (Gorsuch, J., concurring) ("[C]ourts must be certain of Congress's intent before finding that it legislate[d] in areas traditionally regulated by the States."). Here, Defendants claim for themselves the authority to issue any regulation that a state could issue, *see* Defs.' Op. at 24 ("In the context of labor regulations, federal agencies have, at a minimum, the same authority to regulate as do state agencies"), and along the way potentially preempts state statutes.[7] But the NLRA explicitly disclaimed federal collective bargaining protections for agricultural workers, and left open to the states the choice of how to regulate them. By stepping into the state's regulatory role, DOL overturns Congress' decision in the NLRA to forego a single national choice in favor of state-by-state regulation. When DOL tramples on this traditional state authority, therefore, they "must be certain of Congress's intent."

---

[7] *See, e.g.*, K.S.A. § 44-828(c)(6) which prohibits strikes "during periods of marketing of livestock or during a critical period of production or harvesting of crops."

*Id.* And DOL cannot point to any provision of law showing Congress wanted it to regulate the collective bargaining rights of agricultural workers.

At this point, Defendants need to demonstrate they have clear congressional authorization. This they cannot do. The Court should be particularly skeptical when an agency locates newfound—and profoundly significant—statutory authority in an old statute, especially when it has a tremendous impact over a huge sector of the economy. *See UARG v. EPA*, 573 U.S. 302, 328 (2014) (courts dubious of agency's discovery of its "newfound authority" to issue regulation); *Nebraska v. Biden*, 600 U.S. 477, 519 (2023) (courts "pump[] the breaks" when an agency discovers "an unheralded power" over "a significant portion of the American economy" in a "long-extant statute" (quoting *UARG*, 573 U.S. at 324)); *id.* (courts consider "'consistency of an agency's views when we weigh the persuasiveness of any interpretation it proffers in court'" (quoting *Bittner v. United States*, 598 U.S. 85, 97 (2023)) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944))).

> If any agency could override that through relying on vague authority from another statute, it would obstruct Congress' prohibition in the NLRA and render it ineffective. This is especially true given Defendants' contention that the Final Rule's newfound benefits would also extend to some American workers as well. The Court should reject Defendants' attempts to make the NLRA's exclusion of agricultural workers dead letter law. The correct reading of the NLRA is that it prohibits any federal collective bargaining type protections for all agricultural workers as that is the only interpretation that furthers rather than obstructs Congress' purposes.

DOL claimed that Section 1188 gave it "broad" authority to promulgate any rule that would protect American workers from being adversely affected by H-2A workers. Defs.' Op. at 15. This is a stunning claim of authority that gives DOL virtually "unlimited power." *Nebraska*, 600 U.S. at 501; *see Merck & Co., Inc. v. Dep't of Health & Hum. Servs.*, 962 F.3d 531, 541

(D.C. Cir. 2020) ("[T]he breadth of the Secretary's asserted authority is measured not only by the specific application at issue, but also by the implications of the authority claimed.").

If it were indeed true, there would be no limit on what DOL could do as long as it purported to find that its action protected American workers, even if that regulation violated another statute. One would expect Congress to be very clear if it were indeed granting that authority. *See W. Virginia*, 597 U.S. at 728 (explaining that under EPA's new interpretation, "it could go further," even forcing coal plants "to cease making power altogether"). As in *W. Virginia*, DOL "claim[s] to discover in a long-extant statute an unheralded power," by relying on "oblique or elliptical language." 597 U.S. at 723-24 (cleaned up). Not only is Defendants' reading of the statute not the best reading, it is incorrect and arguably unconstitutional. Defendants handwave at the other regulations DOL has passed under the alleged authority granted by § 1188. Defs.' Op. at 17–18.

The fact that DOL has promulgated other regulations does not mean they have authority to enact this specific regulation here. Unlike the Rule here, many of these regulations do directly regulate "wages" and "working conditions" (without granted rights Congress withheld), which at least arguably brings them under the auspices of § 1188. *See, e.g.*, 20 C.F.R. § 655.122(a) (employers must first "offer to U.S. workers no less than the same benefits, *wages*, and *working conditions* that the employer is offering, intends to offer, or will provide to H-2A workers" (emphases added)).

Nor does it mean they have broad authority under Section 1188. An agency cannot "defeat a statute's text by 'adverse possession.'" *Airlines for Am. v. Dep't of Transp.*, 110 F.4th 672, 676 (5th Cir. 2024) (quoting *Rapanos v. United States*, 547 U.S. 715, 752 (2006)); *see also N.L.R.B. v. Noel Canning*, 573 U.S. 513, 613–14 (2014) (Scalia, J., concurring) (agency cannot

"accumulate power through adverse possession by engaging in a consistent and unchallenged practice over a long period of time" (emphasis omitted)); *see also W. Virginia*, 597 U.S. at 725 (observing that prior EPA rule it cited as historic precedent "was never addressed by a court"); *Nebraska*, 600 U.S. at 497 ("But the Secretary's invocation of the waiver power here does not remotely resemble how it has been used on prior occasions."). "[W]hile longstanding agency practice might have the power to persuade, it has never had the power to control." *Rest. L. Ctr. v. United States Dep't of Lab.*, 115 F.4th 396, 407 (5th Cir. 2024) (internal quotation marks omitted) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Reliance on unchallenged past practice "is irreconcilable with the judicial obligation to interpret the statute that Congress actually enacted." *Career Colls. & Sch. of Tex. v. United States Dep't of Educ.*, 98 F.4th 220, 241 (5th Cir. 2024). So, to the extent these regulations went unchallenged, the fact that they were promulgated does not mean DOL had the power to promulgate them—let alone that it had the power to promulgate this specific Rule.

Finally, some of these regulations were challenged and upheld under the *Chevron* framework. *See, e.g.*, *Overdevest Nurseries, L.P. v. Walsh*, 2 F.4th 977, 983 (D.C. Cir. 2021) ("We next turn to whether the Secretary's interpretation of section 1188(a)(1) was reasonable under Chevron Step Two.") (considering 20 C.F.R. § 655.103(b)); *Garcia-Celestino v. Ruiz Harvesting, Inc.*, 843 F.3d 1276, 1288 (11th Cir. 2016). So, they cannot possibly support the conclusion that Congress clearly granted DOL the authority to promulgate them or that Congress granted DOL broad authority to enact the Rule here.

At bottom, Defendants must show that Congress gave DOL clear authority to grant unionization rights to H-2A workers. They do not have that and as a result the Rule flunks under the major questions doctrine.

## II.        The Rule is Arbitrary and Capricious

Defendants' argument that they did not consider impermissible factors largely mirrors their argument that the Rule does not violate the NLRA. Defs.' Op. at 30. As this Court has already held, because there is "no evidence of federal Congressional intent to create a right to collective bargaining for agricultural workers," Prelim. Inj. Order at 25, any rule premised on the need for H-2A workers to have collective bargaining rights relies on an impermissible factor. Congress could not have expressly denied agricultural workers such rights and also intended DOL to consider them for the H-2A program. DOL "took into account considerations that Congress could not have intended to make relevant," so its "action proceeded from an erroneous premise and [its] decision cannot stand." *D.C. Fed'n of Civic Ass'ns v. Volpe*, 459 F.2d 1231, 1247 (D.C. Cir. 1971).

The Rule is also arbitrary and capricious because it is impossible to describe DOL's explanation as "reasoned." True, they offer a reason as justification for the Rule but that does not make it "reasoned." That is because the lengths Defendants go to explain how they got from the supposed need for the Rule to the Rule itself, Defs.' Op. at 33–34, are roundabout at best.[8] Reasoned decision-making requires a "rational connection between the facts found and choice made," which "is satisfied when the agency's explanation is clear enough that its path may reasonably be discerned." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016). Here,

---

[8] A prime example of the roundabout reasoning employed by Defendants in support of the Rule is their contention that the protections for concerted activities are needed under the theory that "[b]ecause H-2A workers are easier to exploit, some employers are more likely to fill jobs through the H-2A program and less likely to hire U.S. workers." Defs. Op. at 7–8. But this ignores the fundamental manner in which the H-2A program operates—that employers can only hire H-2A workers if DOL certifies that there are not sufficient U.S. workers to perform the work. But this reason offered by Defendants would only apply if DOL failed to do its job at the certification stage before an H-2A worker ever stepped foot on a farm.

the path from Congress' intent—to protect American workers—to giving collective bargaining rights to foreign workers is not remotely clear. Under DOL's logic, *any* benefit to H-2A workers prevents adverse effects to American labor. There is no limiting principle—DOL could enact a regulation that required H-2A employers pay H-2A workers in gold bars on the theory that it would make them more likely to hire American workers or that it would keep wages for American workers more stable. Sure, there is a reason, but the Rule itself is not reasoned.

DOL's explanation for its sharp departure from prior policy is also inadequate. DOL claims that its bare acknowledgment that it was adding collective bargaining protections where none had existed satisfied its obligation to show awareness that it was changing policy. Defs.' Op. at 33. Under this logic, there is no difference between adopting a new policy and acknowledging a sharp departure. Yet the Final Rule lacked any acknowledgment of the costs of adding protections for collective bargaining or the benefits of the prior policy of not protecting collective bargaining.

Finally, an agency must "fully explain the factual *and legal* basis for the rule." *Hewitt v. Comm'r of IRS*, 21 F.4th 1336, 1342 (11th Cir. 2021). While DOL may have explained why it thought the Rule was necessary, it did not explain how it suddenly acquired the authority to enact it. DOL did not explain why a law that has existed for decades gave it the authority to grant collective bargaining rights to H-2A workers when it did not before. Their explanation for their authority is not reasoned at all.

### III.     All Plaintiffs have Standing

Defendants' challenges to Plaintiff States' standing are clearly contradicted by the record in this case and should fail. At a minimum, Private Plaintiffs have standing which means the

Court can end its standing analysis as all Plaintiffs are seeking the same relief. Regardless, Plaintiff States also have Standing.

### A. At Least One Plaintiff Inarguably Has Standing

The Court need not address Plaintiff States' standing at all because Defendants do not challenge Private Plaintiffs' standing. Nor could they reasonably do so. Miles Berry Farm and the members of the Georgia Fruit and Vegetables Association employ H-2A workers and are directly impacted by the regulation. *See* ECF #19-2 ¶¶ 10–12, 21 (Decl. of Allen Miles); #19-3 ¶¶ 9–10, 15–18 (Decl. of Chris Butts). If one plaintiff has standing, the court has Article III jurisdiction over the case and may decide the merits. *See Biden v. Nebraska*, 143 S. Ct. 2355, 2368 (2023); *United States v. Texas*, 599 U.S. 670, 709 n.1 (2023) (Alito, J., dissenting) ("In a case with multiple plaintiffs, Article III permits us to reach the merits if any plaintiff has standing."); *Missouri v. Biden*, No. 4:24-CV-00520-JAR, 2024 WL 3104514, at *19 (E.D. Mo. June 24, 2024) (issuing a nationwide injunction after finding the state of Missouri could challenge a rule without considering the other States' standing). Because these two Plaintiffs have clear, obvious, and unchallenged standing, the Court may proceed directly to the merits as it did in earlier proceedings. *See* Prelim. Inj. Order at 29.

Defendants' suggestion that the Court must decide the standing of all parties before moving on the merits, *see* Defs.' Op. at 34, is not supported by caselaw, including their own cited cases. In *Lewis v. Casey*, the Court discussed standing when it dismissed the case of twenty-two prisoners who raised access-to-courts challenges, but ultimately concluded "[o]ur holding regarding the inappropriateness of systemwide relief for illiterate inmates *does not rest upon the application of standing rules*." 518 U.S. 343, 360 n.7 (1996) (emphasis added). Even if standing had been relevant, Plaintiffs here, unlike the plaintiff in *Lewis*, *see id.* at 359, are all

harmed by the same provisions of the same rule, have raised the same challenges, and seek the same remedy. So, there is no need for the Court to choose between parsing out who has standing to challenge which provision or to dispense standing in gross. Defs.' Op. at 35 (quoting *Lewis*, 518 U.S. at 358 n.6).

### B. Plaintiff States Have Standing

Regardless, Plaintiff States do have standing. Defendants argue, as they did before, that the States failed to show a sufficient injury-in-fact to establish standing. Defs.' Op. at 34. The States provided evidence of the fees and costs they will incur if the Rule takes effect. *See* Bassett Decl., Dkt. 19-7 at ¶5; Waits Decl., Dkt. 19-13 at ¶6; Potts Decl., Dkt. 19-11 at ¶¶10-14; Cabrera Decl., Dkt. 19-14 at ¶¶8-9; Davis Decl., Dkt. 19-10 at ¶¶8-10; Goldwire Decl., Dkt. 19-9 at ¶¶8-15; York Decl., Dkt. 9-12 at ¶¶8-13; Roth Decl., Dkt. 19-8 at ¶¶8-12; ECF 111-1, ¶¶ 23-45. The Rule itself states acknowledges costs will be imposed on the States. *See* 89 Fed. Reg. at 33,904. And Defendants have conceded here that States will incur fees and costs. *See* Defs.' Op. at 37-38 (acknowledging that "the only impact the challenged provisions will have on the SWAs is the need to review updated paperwork and check employers' assurances…"). This economic loss confers harm and standing. *Georgia*, 46 F.4th at 1302 "This Circuit has recognized that unrecoverable monetary loss is an irreparable harm.").

So, rather than deny the obvious—that the States will suffer an economic injury under the Rule—Defendants argue the States will not really be harmed because DOL will provide the funds. But the States provided evidence showing the States will face costs that will not be covered by the federal government. *See, e.g.*, Davis Decl., Dkt. 19-10 at ¶¶8-10; Waits Decl., Dkt. 19-13 at ¶6; Roth Decl., Dkt. 19-8 at ¶ 10. And Defendants have no proof to counter this showing of the States. They have no counter-declarations. Nothing in the Rule itself guarantees

19

the costs will be covered. All they have provided the Court are inadmissible statements of counsel. This is not enough to overcome the States' evidence of harm. *See Kansas v. Biden*, No. 24-1057-DDC-ADM, 2024 WL 2880404, at *11 (D. Kan. June 7, 2024) ("Alaska has adduced some facts. The court can't say the same for defendants. They've proffered no evidence of their own. Without any contradictory evidence, defendants have given no facts to reach a different conclusion. In short, the court currently has no reason to doubt [Alaska's declaration]".)[9] As in *Georgia*, "[t]he federal government does not push back on the existence of those costs. Nor has it identified a way for the plaintiffs to recoup them." 46 F.4th at 1302. And as in *Georgia*, Defendants try to argue that "ordinary compliance costs are typically insufficient to render harm irreparable," 46 F.4th at 1302; Defs.' Op. at 37, a claim courts have firmly rejected. *See Florida v. Becerra*, 544 F. Supp. 3d 1241, 1300 (M.D. Fla. 2021) (collecting cases).[10]

Defendants expect the States to front the costs and hope Congress will later appropriate the money to pay them back. But now it is the Defendants who bring speculative arguments to the Court. Even assuming this will happen, it still does not negate the States' injuries. When assessing standing, it is widely accepted that the Court does not engage in an accounting exercise. *Texas v. United States*, 50 F.4th 498, 518 (5th Cir. 2022); *Missouri v. Biden*, No. 4:24-CV-00520-JAR, 2024 WL 3104514, at *19 (E.D. Mo. June 24, 2024); *Florida v. United States*, 660 F. Supp. 3d 1239, 1267 (N.D. Fla. 2023), *appeal dismissed*, No. 23-11528, 2023 WL

---

[9] *See also id.* at *13 ("Without any evidence to the contrary, the court accredits the declarant's testimony that the SAVE Plan will cause THECB, and therefore Texas, to lose interest revenue. Again, there's no reason to believe that the THECB declarant failed to account for the SAVE Plan's potential benefits. The court thus rejects defendants' argument that plaintiffs have failed to show an injury because the SAVE Plan might benefit the public instrumentalities.").

[10] Many of these cases discuss administrative costs in finding the States have suffered irreparable harm without discussing standing at all, but they are nonetheless applicable. Costs inflict an injury, and a plaintiff would not have been irreparably harmed if he was not harmed in the first place.

5212561 (11th Cir. July 11, 2023); *New York v. Scalia*, 490 F. Supp. 3d 748, 771 (S.D.N.Y. 2020) ("The standing analysis is not an accounting exercise."); *NCAA v. Governor of N.J.*, 730 F.3d 208, 223 (3d Cir. 2013); *L.A. Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 656–59 (9th Cir.2011); *Ross v. Bank of Am., N.A. (USA)*, 524 F.3d 217, 222 (2d Cir. 2008); *Markva v. Haveman*, 317 F.3d 547, 557–58 (6th Cir. 2003); *see also* 13a Charles Alan Wright Et Al., Federal Practice and Procedure § 3531.4 (3d ed. 2015) ("Once injury is shown, no attempt is made to ask whether the injury is outweighed by benefits the plaintiff has enjoyed from the relationship with the defendant. Standing is recognized to complain that some particular aspect of the relationship is unlawful and has caused injury."). The only time a court *might* consider offsets is if the offset is part of the same transaction as the fee causing harm. *See Henderson v. Stalder*, 287 F.3d 374, 379 (5th Cir. 2002). But here, as mentioned, the Rule (the thing imposing the financial harm) does not expressly contain any promise to reimburse the States, so, to the extent it exists, the offset rule would not apply here.

In short, the States have produced evidence of the financial harm they will incur if this rule takes effect. Defendants do no produce any evidence to the contrary and, in fact, acknowledge both here and in the Rule that the States will incur costs. Because of this, there is no question the States will suffer an injury-in-fact and have standing.

**IV.     The Court Should Vacate the Entire Rule**

Although the court issued an injunction limited to the parties because of the Eleventh Circuit's caution against nationwide injunctions, such concerns do not apply to final judgment. The proper remedy is to vacate the Rule in its entirety.

**A. Vacatur is the appropriate remedy**

In arguing for party-specific vacatur, Defendants ignore that vacatur "operates to set aside a rule generally, not as a partial remedy for the plaintiffs." *Florida*, 660 F. Supp. 3d at 1284. Vacatur removes the legal source of a rule, taking away the agency's power to act altogether. *See F.E.C. v. Cruz*, 596 U.S. 289, 301 (2022) (agency "literally has no power to act— including under its regulations— unless and until Congress authorizes it to do so by statute"). Therefore, when the Court vacates an unlawful agency action it cannot be limited to one party. *See Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2463 (2024) (Kavanaugh, J., concurring); *Career Colls. of Tex.*, 98 F.4th at 255 (relief under § 706 "is not party restricted"); *Kiakombua v. Wolf*, 498 F. Supp. 3d 1, 52 (D.D.C. 2020) (Jackson, J.) (vacatur of a rule "for everyone" is normal APA remedy); Mila Sohoni, *The Past and Future of Universal Vacatur*,133 Yale L. J. 2305, 2311 (2024) ("The APA authorizes the universal vacatur of rules.").

Defendants make no effort to explain how vacatur could be limited to only some parties. When reviewing agency action, the "entire case is a question of law and the district court sits as an appellate tribunal." *Health Freedom Def. Fund, Inc. v. Biden*, 599 F. Supp. 3d 1144, 1156 (M.D. Fla. 2022) (cleaned up). Like a judgment on appeal, once a district court vacates a rule, it has no legal effect whatsoever. *See Griffin v. HM Fla.-ORL, LLC*, 144 S. Ct. 1, 2 n.1 (2023) (Kavanaugh, J., statement respecting denial of application) (once vacated, a rule is "treated as though it had never happened."); Mila Sohoni, *The Power to Vacate A Rule*, 88 Geo. Wash. L. Rev. 1121, 1173 (2020) ("The term 'set aside' means invalidation—and an invalid rule may not be applied to anyone."). Defendants' position makes no sense. *See N.M. Health Connections v. Dep't of Health & Hum. Servs.*, 340 F. Supp. 3d 1112, 1183 (D.N.M. 2018) ("The Court does not

know how a court vacates a rule only as to one state, one district, or one party."). It would be like a party who has its judgment vacated on appeal seeking to enforce it. It simply has no legal authority to act.

Defendants try to lump the criticism of nationwide injunctions into a criticism of what it calls "universal" vacatur. Defs.' Op. at 39. But the courts of this circuit recognize that the criticisms of nationwide injunctions do not pertain to vacatur, a "less drastic remedy." *See Health Freedom Def. Fund,* 599 F. Supp. 3d at 1177 (quotation omitted); *see Monsanto Co. v. Geerton Seed Farms*, 561 U.S. 139, 165-66 (2010) (recognizing vacatur and an injunction are separate forms of relief, even when it has the same "meaningful practical effect"); *Alabama v. CMS*, 674 F.3d 1241, 1244-45 (11th Cir 2012) (per curium) (discussing vacatur and an injunction as separate remedies). Defendants continue arguing that courts do not "lightly assume" that Congress intended to displace the traditionally circumscribed scope of equitable remedies, Defs.' Op. at 39 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982)) without acknowledging that, "in the APA, Congress did in fact depart from that baseline and authorize vacatur," *Corner Post*, 144 S. Ct. at 2467 (Kavanaugh, J., concurring) (quoting 5 U.S.C. § 706(1)).

Defendants counter that the "set aside" language in § 706 of the APA is not a remedy at all because it is not situated in § 703. That is an argument against vacatur, not universal vacatur, and Defendants cannot bring themselves to argue that vacatur is not the ordinary remedy in this circuit because it is. *See Black Warrior Riverkeeper Inc. v U.S. Army Corps of Engineers*, 781 F.3d 1271, 1290 (11th Cir. 2015). Furthermore, that "weak" argument overlooks—in addition to the reams of cases that say otherwise—the text of § 706, "which authorizes courts to 'compel

23

agency action unlawfully withheld or unreasonably delayed'—unmistakably a remedy." *Corner Post*, 144 S. Ct. at 2467 (Kavanaugh, J., concurring) (quoting 5 U.S.C. § 706(1)).

Defendants cite not one binding opinion in support of their argument for party-specific vacatur. They rely on Justice Gorsuch's concurrence in *United States v. Texas*, but Justice Gorsuch was questioning the existence of a vacatur remedy at all, 599 U.S. 670, 693 (2023), and again, Defendants do not go that far. Even Justice Gorsuch acknowledged that "the matter is [not] open and shut." *Id*. at 701. In fact, the federal government only recently began arguing that vacatur was not authorized under the APA. *See Corner Post*, 144 S. Ct. at 2461 (Kavanaugh, J., concurring) (Government's "newly minted position is both novel and wrong" and would "revolutionize long-settled administrative law[.]"); *N.M. Health Connections*, 340 F. Supp. 3d at 1183 (recognizing that DOJ lawyer acknowledged in 2018 "that he was not sure if the department had ever asked for relief to be limited to one state before doing so in this case"); Sohoni, 133 Yale L. J. at 2308 (when DOJ made this argument in *United States v. Texas*, "[s]everal of the Justices reacted to [it] with palpable surprise"); Ronald M. Levin, Vacatur, Nationwide Injunctions, and the Evolving APA, 98 Notre Dame L. Rev. 1997, 2008 (2023) (calling the government's arguments in *United States v. Texas* "[d]eeply revisionst").

Defendants also cite *Nuziard v. Minority Business Development Agency*, No. 4:23-CV-00278-P, 2024 U.S. Dist. LEXIS 38050, at *111 (N.D. Tex. Mar. 5, 2024), to argue that the "APA does not explicitly authorize vacatur." Defs.' Op. at 39. But again, that is an argument against vacatur, not for party-limited vacatur. And Defendants do not acknowledge that *Nuziard* also (1) did not contest that "the APA contemplates nationwide relief from invalid agency action," *id.* at *112; (2) recognized its view on whether that meant vacatur was not the law of the

Fifth Circuit, and that the court had *itself* vacated rules, *see id.* at *115; (3) or that the court went on to issue a nationwide injunction, *id.* at *127, 132. *Nuziard* is far from helpful to Defendants.

Vacatur is more than just discretionary. *See Regents,* 591 U.S. at 8 (2020) (unlawful agency action must "be vacated"). Under § 706, when a rulemaking is "not in accordance with law," then Congress has declared that it "*shall*" be set aside. 5 U.S.C. § 706 (emphasis added). Defendants seek to undo this congressional command. There is no basis in the law or logic to limit it just to Private Plaintiffs.

### B. Plaintiffs are also entitled to a permanent injunction

Defendants argue Plaintiffs are not entitled to a permanent injunction. Defs.' Op. at 36. Putting aside the fact that vacatur is the appropriate remedy (and what Plaintiffs requested), these arguments fail for the same reasons that the standing arguments failed.

Defendants generally maintain that Plaintiffs did not address the factors for a permanent injunction, Defs.' Op. at 36, but the Court already determined that Plaintiffs face an irreparable harm that cannot be compensated by monetary damages, that an injunction would not disserve the public interest, and that on balance a remedy in equity is warranted. Prelim. Inj. Order at 26–30. These are the same factors that govern a permanent injunction. *See Bay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Defendants present no new facts or legal argument, and it is now certainly the law of the case. *See Compulife Software, Inc. v. Newman*, 111 F.4th 1147, 1156 (11th Cir. 2024) (issues decided at one stage of the case are binding at later stages).

There is no other argument that Private Plaintiffs are not entitled to permanent relief. As this Court has already found, Private Plaintiffs have shown they will face unrecoverable monetary costs and the other injunction factors favor Plaintiffs. Prelim. Inj. Order at 27–29. The Rule, including its provision granting H-2A workers the right to have a designee attend interviews that

may lead to disciplinary action, also disrupts the Private Plaintiffs' ability to effectively and efficiently operate their farms. ECF #19-2 ¶ 20 (Decl. of Allen Miles); ECF #19-4 ¶ 22 (Decl. of Dick Minor); ECF # 19-5 ¶ 22 (Decl. of Bill Brim); ECF #19-6 ¶ 20 (Decl. of Joseph Thompson). Defendants do not present any evidence contradicting the Private Plaintiffs' evidence or the Court's earlier findings, and nothing has changed since the Court granted the preliminary injunction. Defendants instead train their fire on the Plaintiff States, unsuccessfully trying to reheat their argument that the states face no injury. This is wrong, for the same reasons discussed above. Courts in this circuit have repeatedly recognized "that 'unrecoverable monetary loss is an irreparable harm,'" Prelim. Inj. Order at 27 (quoting *Georgia v. President of the United States*, 46 F.4th at 1302), and Plaintiff States will incur them.

In any event, this Court should issue a universal injunction. They are warranted in "appropriate circumstances." *Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1282 (11th Cir. 2021) (quoting *Texas v. United States*, 809 F.3d 134, 188 (5th Cir. 2015)). Those circumstances include when immigration law is implicated, cases involving certain constitutional challenges, to avoid the "chaos and confusion" of a patchwork of injunctions, when necessary to provide complete relief to plaintiffs, and to protect similarly situated nonparties. *See id*. This case is appropriate under these factors.

This case does involve immigration and so a universal injunction would satisfy the "need for uniformity in the enforcement of immigration law and Congress's desire to create a comprehensive and unified system of immigration law." *Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th at 1282. Also, a party-limited injunction would lead to "chaos and confusion" as different laws apply throughout the Nation. This is not a particularly difficult question of law such that there is an interest in allowing it to "percolate among the courts." *Id.* at 1283. Further, the lack of

26

uniformity may place farms and state protected by the injunction at a competitive disadvantage regarding the recruitment of H-2A workers.

A universal injunction is also more easily administered. *See Nuziard*, 2024 U.S. Dist. LEXIS 38050, at *127-130. It is more administrable because otherwise DOL would have "one set of rules for certain locations and another for all others." *Id*. at *129. A universal injunction means DOL "need not worry about different standards for different locations." *Id*. at *128.

Injunctions are strong medicine, to be sure, but DOL has shown that will stretch its authority to limit relief ordered by the Court. Previously, DOL improperly interpreted this Court's preliminary injunction to deny relief to new members of GFVGA. *See Foreign Labor Certification*, *Announcements*, Department of Labor (last visited Sept. 30, 2024), https://perma.cc/6KGJ-EDUK (explaining compliance with the preliminary injunction order by processing H-2A applications for members of GFVGA "as of August 26, 2024" in accordance with regulations in effect prior to Rule). That was wrong, s*ee Kansas v. Dep't of Educ.,* -- F. Supp. 3d --, 2024 U.S. Dist. LEXIS 127751, at *11 (D. Kan. July 19, 2024) ("Defendants do not cite to any authority finding that injunctive relief cannot extend to prospective members of an organization that was granted injunctive relief."), not contemplated by this Court's order, and, in the end, only underscores why a party-limited injunction is particularly difficult to administer with organizational plaintiffs. Finally, because GFVGA is a membership association, a universal injunction avoids the "identification problem" inherent in knowing who a member of GFVGA is currently. *See Health Freedom Def. Fund,* 599 F. Supp. 3d at 1177 (recognizing that "[t]he difficulty in distinguishing named Plaintiffs" from others "almost ensures that a limited remedy would be no remedy at all").

### C. The Rule cannot be severed

27

In an effort to save some of their unlawful Rule, Defendants ask the Court to don the mantel of the Executive and rewrite the Rule for them to make it lawful. That is, they ask the Court to sever the unlawful provisions without providing any roadmap as to how to do so. The Court should reject the invitation.

Severance is only appropriate in two circumstances. *MD/DC/DE Broadcasters Ass'n v. F.C.C.*, 236 F.3d 13, 22 (D.C. Cir. 2001). First, the agency must make it plain that it intended the rule to take effect even if the offending provisions were not there in the first place. *Id*. Second, the agency must show the rule can function without the unlawful provisions. *Id*. Defendants here fail on both fronts.

First, there is no "evidence that [DOL] contemplated, during the rulemaking process, how the remainder of the Rule would apply without any of its core provisions. *Tennessee v. Cardona*, No. 24-5588, 2024 WL 3453880, at *4 (6th Cir. July 17, 2024). Defendants point to the severability clause in the Rule, but severability clauses are not magic words to save a rule. Their mere existence does not carry the day. *See id.*; *Mayor of Baltimore v. Azar*, 973 F.3d 258, 292 (4th Cir. 2020); *see also Alabama v. U.S. Sec'y of Educ.*, No. 24-12444, 2024 WL 3981994, at *8 (11th Cir. Aug. 22, 2024) (disregarding severability clauses that did not address what would happen if multiple parts of a rule were found unlawful). The Court must determine whether the agency would have promulgated the Rule if some parts were not included.

But it cannot do that, because Defendants do not show at all how the Rule would operate without the sections that cause the Rule to exceed DOL's statutory authority. There is no evidence DOL ever contemplated how the rule would operate without the core provisions protecting collective bargaining. *Alabama v. U.S. Sec'y of Educ.*, No. 24-12444, 2024 WL 3981994, at *8 (11th Cir. Aug. 22, 2024). And Defendants certainly have not provided a

roadmap. *Tennessee v. Cardona*, 2024 WL 3453880, at *4 (declining to sever parts of a rule when the Department did not explain how the rule would take effect without the severed provisions). Judicial restraint and separation of powers principles counsel courts to refrain from rewriting rules on their own, even as they try to "salvage" them. *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329 (2006).

Finally, Defendants are incorrect that Plaintiffs have challenged the legality of only a few parts of the Final Rule. Plaintiffs have highlighted the various unlawful provisions in the Final Rule which make the rule itself unlawful. And Plaintiffs have argued the entire Rule is arbitrary and capricious. As such, the *entire* Rule must be vacated. *See Kansas v. United States Dep't of Educ.*, No. 24-4041-JWB, 2024 WL 3273285, at *18 (D. Kan. July 2, 2024); *Tennessee v. Cardona*, No. CV 2: 24-072-DCR, 2024 WL 3019146, at *43 (E.D. Ky. June 17, 2024) ("[T]he Department's rulemaking was arbitrary and capricious, resulting in a rule that is invalid in its entirety.").

For these reasons, the Court should vacate the unlawful Rule in its entirety.

## CONCLUSION

As Plaintiffs have noted time and time again, there is no universe in which the Rule is lawful. The Court agreed with Plaintiffs and hit the pause button through a limited preliminary injunction. Now is the time to end the Rule for good. Nothing about its legality has changed since this Court issued the preliminary injunction except for the proper remedy. That remedy is universal vacatur and/or a universal injunction. The Court should grant Plaintiffs' motion for summary judgement with that relief in mind and deny Defendants' cross motion for summary judgment.

Respectfully submitted this the 6th day of November,

**KRIS W. KOBACH**
**Attorney General of Kansas**

*/s/ James R. Rodriguez*
James R. Rodriguez
*Assistant Attorney General*
Abhishek S. Kambli
*Deputy Attorney General*
KANSAS OFFICE OF THE
ATTORNEY GENERAL
Topeka, Kansas 66612-1597
Phone: (785) 296-7109
Email: jay.rodriguez@ag.ks.gov
abhishek.kambli@ag.ks.gov
*Counsel for Plaintiff State of Kansas*

**CHRISTOPHER M. CARR**
**Attorney General of Georgia**

Stephen J. Petrany
*Solicitor General*
Office of the Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3408
spetrany@law.ga.gov

*/s/ G. Todd Carter*
G. Todd Carter, Esq.
   Georgia Bar No: 113601
Special Assistant Attorney General
OFFICE OF THE GEORGIA ATTORNEY
GENERAL
BROWN, READDICK, BUMGARTNER,
CARTER, STRICKLAND & WATKINS, LLP
5 Glynn Avenue
P. O. Box 220
Brunswick, GA 31521-0220
Tel:  912-264-8544
Fax: 912-264-9667
tcarter@brbcsw.com
*Counsel for Plaintiff State of Georgia*

**ALAN WILSON**
**Attorney General of South Carolina**

*/s/ Joseph D. Spate*
Joseph D. Spate
Assistant Deputy Solicitor General
Office of the Attorney General of South Carolina
1000 Assembly Street
Columbia, SC 29201
(803) 734-3371
josephspate@scag.gov

*/s/ Thomas T. Hydrick*
Thomas T. Hydrick
Assistant Deputy Solicitor General
Office of the Attorney General
P.O. Box 11549
Columbia, SC 29211
803-734-4127
*Counsel for Plaintiff State of South Carolina*

**TIM GRIFFIN**
**Arkansas Attorney General**

*/s/Michael Cantrell*
Michael Cantrell
 *Assistant Solicitor General*
Nicholas J. Bronni
  *Solicitor General*
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, AR  72201
Telephone: (501) 682-2401
michael.cantrell@arkansasag.gov
*Counsel for Petitioner State of Arkansas*

31

**ASHLEY MOODY**
**Attorney General of Florida**

*/s/ Christine Pratt*
Christine Pratt (FBN 100351)
COUNSELOR TO THE ATTORNEY GENERAL
Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399
(850) 414-3300
(850) 410-2672 (fax)
christine.pratt@myfloridalegal.com
*Counsel for Plaintiff State of Florida*

**RAÚL R. LABRADOR**
**Attorney General of Idaho**

*/s/ Alan Hurst*
Alan Hurst, *pro hac vice*
*Solicitor General*
700 W. Jefferson St., Suite 210,
PO Box 83720,
Boise, Idaho 83720
(208) 947-8773
Alan.Hurst@ag.idaho.gov
*Counsel for Plaintiff State of Idaho*

**THEODORE E. ROKITA**
**Attorney General of Indiana**

*/s/ James A. Barta*
JAMES A. BARTA
*Solicitor General*
Indiana Attorney General's Office
IGCS – 5th Floor
302 W. Washington St.
Indianapolis, IN 46204
Phone: (317) 232-0709
Email: james.barta@atg.in.gov
*Counsel for Plaintiff State of Indiana*

**BRENNA BIRD**
**Attorney General of IOWA**

*/s/ Eric H. Wessan*
Eric H. Wessan, *pro hac vice*
*Solicitor General*
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
eric.wessan@ag.iowa.gov
*Counsel for Plaintiff State of Iowa*

**LIZ MURRILL**
**Attorney General of Louisiana**

*/s/ Zachary Faircloth*
Zachary Faircloth (La #39875)
  *Principal Deputy Solicitor General*
Louisiana Department of Justice
1885 North Third Street
Baton Rouge, Louisiana 70804
(225) 326-6766
fairclothz@ag.louisiana.gov
*Counsel for Plaintiff State of Louisiana*

**ANDREW BAILEY**
**Attorney General of Missouri**

/s/ *Reed C. Dempsey*
Reed C. Dempsey #1697941DC
   *Deputy Solicitor General*
Missouri Attorney General's Office
Post Office Box 899
Jefferson City, MO 65102
Tel. (573) 751-1800
Fax. (573) 751-0774
reed.dempsey@ago.mo.gov
*Counsel for Plaintiff State of Missouri*

**AUSTIN KNUDSEN**
**Attorney General of Montana**

*/s/ Christian B. Corrigan*
Christian B. Corrigan
  *Solicitor General*
Peter M. Torstensen, Jr.
  *Deputy Solicitor General*
MONTANA DEPARTMENT OF JUSTICE
215 North Sanders
P.O. Box 201401
Helena, Montana 59620-1401
(406) 444-2026
christian.corrigan@mt.gov
peter.torstensen@mt.gov
*Counsel for Plaintiff State of Montana*

**MICHAEL T. HILGERS**
**Attorney General of NEBRASKA**

*/s/ Lincoln J. Korell*
Lincoln J. Korell
  *Assistant Solicitor General*
OFFICE OF THE ATTORNEY GENERAL OF
NEBRASKA
2115 State Capitol
Lincoln, Nebraska 68509
(402) 471-2682
Lincoln.Korell@nebraska.gov
*Counsel for Plaintiff State of Nebraska*

**DREW H. WRIGLEY**
**North Dakota Attorney General**

*/s/ Philip Axt*
PHILIP AXT
*Solicitor General*
Office of Attorney General
600 E. Boulevard Ave Dept. 125
Bismarck ND 58505
Phone: (701) 328-2210
Email: pjaxt@nd.gov
*Counsel for Plaintiff State of North Dakota*

34

**GENTNER DRUMMOND**
**Attorney General of Oklahoma**

/s/ *Garry M. Gaskins*
Garry M. Gaskins, II, OBA # 20212
Solicitor General
Zach West, OBA # 30768
Director of Special Litigation
OFFICE OF ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st St.
Oklahoma City, OK 73105
Phone: (405) 521-3921
Garry.Gaskins@oag.ok.gov
Zach.West@oag.ok.gov
*Counsel for Plaintiff State of Oklahoma*

**JONATHAN SKRMETTI**
**Attorney General and Reporter of Tennessee**

/s/ *J. Matthew Rice*
J. Matthew Rice
  *Solicitor General*
Whitney Hermandorfer
  *Director of Strategic Litigation*
Office of the Attorney General and Reporter of
Tennessee
P.O. Box 20207
Nashville, TN 37202-0207
Phone: (615) 741-7403
Email: Matt.Rice@ag.tn.gov
Whitney.Hermandorfer@ag.tn.gov
*Counsel for Plaintiff State of Tennessee*

**KEN PAXTON**
Attorney General of the State of Texas
**BRENT WEBSTER**
First Assistant Attorney General
**RALPH MOLINA**
Deputy Attorney General for Legal Strategy
**RYAN D. WALTERS**
Chief, Special Litigation Division

*/s/ Kathleen T. Hunker*
**KATHLEEN T. HUNKER**
*Special Counsel*
Tex. State Bar No. 24118415

**GARRETT GREENE**
*Special Counsel*
Tex. State Bar No. 24096217
OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Kathleen.Hunker@oag.texas.gov
Garrett.Greene@oag.texas.gov
*Counsel for Plaintiff State of Texas*

**JASON S. MIYARES**
**Attorney General of Virginia**

*/s/ Kevin M. Gallagher*
Kevin M. Gallagher
*Principal Deputy Solicitor General*
Brendan T. Chestnut
*Deputy Solicitor General*
Virginia Office of the Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 786-2071
Fax: (804) 786-1991
Email: kgallagher@oag.state.va.us
Email: bchestnut@oag.state.va.us
*Counsel for Plaintiff Commonwealth of Virginia*

*/s/ Braden H. Boucek*
Braden H. Boucek
  Tenn. BPR No. 021399
  Ga. Bar No. 396831

*/s/ Jordan Miller*
Jordan Miller
    Michigan Bar. No. P81467
SOUTHEASTERN LEGAL FOUNDATION
560 W. Crossville Road, Suite 104
Roswell, GA  30075
Tel.: (770) 977-2131
bboucek@southeasternlegal.org
jmiller@southeasternlegal.org
*Counsel for Private Plaintiffs*

37